No. 14,456.

BACINO *v.* THE PEOPLE.
(90 P. [2d] 5)

Decided April 17, 1939.

Mr. John W. Elwell, Mr. V. G. Seavy, for plaintiff in error.

Mr. Byron G. Rogers, Attorney General, Mr. Henry E. Lutz, Assistant, for the people.

*En Banc.*

Mr. Justice Knous delivered the opinion of the court.

Plaintiff in error, defendant below, was convicted of the larceny of a number of diamond rings of the property of the Mahan Jewelry Company of Colorado Springs. Defendant was tried as an accessory made a principal by section 13, chapter 48, '35 C. S. A., which, so far as pertinent, provides: "An accessory is he or she who stands by and aids, abets or assists, or who, not being present, aiding, abetting or assisting, hath advised and encouraged the perpetration of the crime. He or she who thus aids, abets or assists, advises or encourages, shall be deemed and considered as principal and punished accordingly." The defendant's alleged accomplices, who the people claim physically purloined the diamonds, were named Kaeser and Rutz. Kaeser having died shortly after the commission of the crime never was appre-

hended in connection therewith... Rutz was arrested and charged with the offense and testified for the people in the case at bar, as did the woman companion of Kaeser, named Miss Clark. The defendant did not take the witness stand and the record of his participation in the transaction is uncontradicted. The only evidence offered in his behalf was confined to the contradiction of certain more or less extrinsic details in the testimony of Rutz and Miss Clark. The uncontroverted evidence of the people discloses that on the evening of December 8, 1937, Kaeser, Rutz and Miss Clark went from Denver to Pueblo where the defendant, a tavern operator, resided. On the morning of December 9th the three went to defendant's tavern for breakfast and Rutz, who was acquainted with accused, introduced his two companions. They met again on the afternoon of that day and defendant asked them: ''What did you come after this time'' and ''What are you going to take'' to which the answer was: ''Well, anything he could use.'' Later defendant advised that he could use a couple of guns and a portable typewriter, and in the course of this and other conversations stated that he would like to get some ''ice,'' meaning diamonds, and informed Rutz and Kaeser that if they were going to steal to get something good and ''quit fooling around with petty stealing.'' Defendant informed the two that the Kortz-Lee Jewelry Company in Pueblo had some desirable diamonds on display. Rutz testified that after this conversation he and Kaeser, with the assistance of Miss Clark, attempted to steal diamonds from the Kortz-Lee store by the device of Rutz and Miss Clark engaging a clerk in conversation concerning an alleged prospective purchase while Kaeser attempted to remove the diamonds from the counter or window where they were kept. They, however, were unsuccessful in this projected larceny and in an effort to steal guns from a hardware store. They did, however, manage by this method of operation to abstract some diamonds from another jewelry store in Pueblo, which were promptly bought by defendant, as

was a typewriter purloined by Kaeser. After these transactions were consummated defendant suggested that Rutz and Kaeser go to Colorado Springs with him. The trip was made on December 11 in defendant's automobile, with him driving, Kaeser in the front seat and Rutz in the rear, where, owing to his dozing he did not hear all of the conversation, but testified that in the course of the trip accused remarked that he knew "some swell spots" in Colorado Springs. Upon arrival there defendant stopped his car in front of the Metropole cafe, where Rutz and Kaeser alighted. Bacino told the two to meet him in thirty minutes in that cafe and pointed up the street in the general direction of the location of the Mahan Jewelry Company store. Rutz and Kaeser then proceeded to that shop where, by the expedient of Rutz stating that he desired to buy certain merchandise, the clerk was drawn away from the counter where the diamonds were kept and Kaeser extracted from the case, in display trays, diamonds of the value in excess of $3,000. Immediately thereafter the two left the premises and proceeded to the Metropole cafe where defendant was waiting, who however, upon their entrance accorded them no recognition. The two proceeded to the washroom of this restaurant where Kaeser removed the rings from the trays, concealed the latter, and placed the jewelry in his pocket. Kaeser and Rutz returned to the restaurant proper and partook of refreshments, after which, upon a sign from defendant the three left the restaurant, entered defendant's car and proceeded toward Pueblo. A short distance outside of Colorado Springs Kaeser exhibited the diamonds to defendant, who said: "Put them back in your pocket until we get out of this county," which Kaeser did. After they had crossed the El Paso-Pueblo county line accused drove the car off the main traveled road and the diamonds were again produced and minutely examined by him. After this inspection defendant offered to pay the sum of $500 for the diamonds, which Kaeser indicated was acceptable. The party then

proceeded to Pueblo where later, the same day, defendant gave Kaeser and Rutz $410, which he said was all the money he could raise, and received the diamonds, parting with the injunction that: "If anything happens I don't know you guys," to which the reply was: "We don't know you either."

As one of the grounds for reversal defendant asserts that error was committed in the admission of the evidence concerning the larceny of diamonds in Pueblo by Rutz and Kaeser; the theft of the typewriter by the latter; the purchase of this loot by defendant; the details of the unsuccessful attempt to rob the Kortz-Lee Jewelry Company and the unnamed hardware store in Pueblo by the two active thieves, in their misguided efforts to steal articles which the defendant expressed his willingness to purchase. While as a general rule evidence tending to show that accused has committed a crime wholly independent of the offense for which he is on trial is inadmissible, there is an exception, equally well settled, that it is competent to show that defendant had participated in similar illegal enterprises to prove criminal intent, plan or design, and especially is this the case where, as here, the other transactions were so connected in point of time with the offense under investigation and so similar in character, that the same motive could be imputed as to all of them. *Clarke v. People,* 53 Colo. 214, 125 Pac. 113; *Housh v. People,* 24 Colo. 262, 50 Pac. 1036; *Warford v. People,* 43 Colo. 107, 96 Pac. 556; *Castner v. People,* 67 Colo. 327, 184 Pac. 387; *Bush v. People,* 68 Colo. 75, 187 Pac. 528; *Myers v. People,* 65 Colo. 450, 177 Pac. 145. The trial court by proper instruction expressly limited the consideration of this evidence to the purposes for which it was introduced and advised the jury that defendant could not be tried for or convicted of any criminal offense not charged in the information. No error was committed in this connection.

The witness Rutz testified for the people on direct examination in part as follows: "Q. Did the officers

come to Greeley to see you? A. Yes. Q. Did you tell them about this case? A. I did. Q. Did you tell them about the registering under the name of Vogt in the New Albany Hotel in Pueblo? A. Yes sir." Defendant contends that reversible error was committed in the admission of this testimony, his theory being that the witness was thereby permitted to corroborate his own testimony by stating that he had made prior statements consistent therewith, which it is said is precluded by the rule announced in *Connor v. People,* 18 Colo. 373, 33 Pac. 159, and followed in *DePriest v. People,* 64 Colo. 358, 171 Pac. 1004, and *Baker v. People,* 72 Colo. 68, 209 Pac. 791. A somewhat different situation is presented in the cases cited from that here under consideration in that in each of them evidence of the alleged consistent statements came from other witnesses or was in the form of documentary evidence and not the oral statements of the witness whose testimony thereby was said to be fortified.

A similar assignment of error relating to the admission of certain testimony of Miss Clark is rendered ineffective by defendant's failure to make objection at the time of its reception. However, it may be observed that in no event would her evidence be violative of the rule for which defendant contends, since it merely disclosed that she had told the officers of the transaction; not what she told them. The same may be said of the first question and answer of the witness Rutz, and consideration must be limited to the witness' affirmative answer concerning the alleged "Vogt" registration in the New Albany Hotel. Rutz previously had testified that on the way to Pueblo, after the Colorado Springs robbery, it was agreed that upon reaching Pueblo, Kaeser and Rutz would register at the New Albany hotel under the name of "Vogt." It was planned that after defendant had procured the money to purchase the diamonds he could then examine the hotel registry and by reference to the room assigned to "Vogt," contact the thieves, pay the money and secure the diamonds. Rutz testified that this arrangement was

consummated. The hotel registry of the New Albany hotel was introduced in evidence showing registry by "James Vogt" and number 30 as the room assigned. Upon cross-examination Rutz stated that the room they occupied was located in a corner of the building and, in detail, described the furniture therein. The defense called witnesses who testified that room 30 in the designated hotel was not located in a corner of the building and that the furniture therein was not as described by Rutz. Counsel for defendant assert that in the light of the introduction of this evidence to discredit Rutz's testimony on this point, it was particularly prejudicial to permit him to corroborate his evidence with respect to the matter by stating under oath that he previously had made unsworn statements consistent therewith. However, immediately after the questioned answer was permitted to stand the court sustained an objection to the question: " * * * did you tell the officers * * * the same as you have testified just now?", and a moment later in sustaining an objection to a question designed to elicit substantially the same information as did the response to which error is assigned, said: "The jury is instructed to disregard the question as to whether the witness told the officers or not."

While in itself, as a general proposition, the circumstance that the court excluded similar evidence may not justify the admission of that which was improper, it may mitigate the transgression. Under the state of the record, even if the inadmissibility of the questioned evidence be assumed—and we do not determine that point—it seems clearly evident that defendant was not thereby prejudiced to an extent which would warrant a reversal of the judgment.

Defendant also assigns error to the giving of instruction 7½, which was designed to inform the jury regarding the criminal responsibility of the persons engaged in the concerted common purpose of committing a felony. He questions the propriety of giving an instruc-

tion of this character where the accessory, made a principal by statute, is tried under a separate information. This contention is without merit. We have repeatedly held, in construing section 31, supra, that it is proper to charge an accessory as principal, as was the procedure here. *People v. Zobel,* 54 Colo. 284, 130 Pac. 837; *Mulligan v. People,* 68 Colo. 17, 189 Pac. 5; *Miller v. People,* 92 Colo. 481, 22 P. (2d) 626. It is self-evident that where one is an accessory he of necessity must act in concert with some other or others and whether charged jointly or separately the legal consequences arising from his conduct and that of his associates are measured by the same principle.

It next is urged that giving the instruction was unwarranted because of the asserted lack of evidence to show that defendant counseled the crime charged in the information. Notwithstanding defendant's argument in this connection, we believe his position wholly untenable, since we are convinced that the evidence, and the ordinary inferences to be drawn therefrom, abundantly establish not only prior knowledge on the part of defendant of the Mahan Jewelry Company robbery, but also proclaim unmistakably that he advised and encouraged the perpetration of this particular crime. In *Mulligan v. People, supra,* we held that in the trial of an alleged accessory, the state must show by substantial proof, either directly or by conclusive circumstances, that the accessory had some knowledge of the principal's offense, but it is not necessary to prove agreement in words or writing between principal and accessory to commit the offense, since such agreement may be established as an inference from other established facts and circumstances.

Defendant also suggests that by its terms the instruction would allow his conviction of the Mahan larceny without reference to whether he knew of the intention of Kaeser and Rutz to commit the same prior to the actual theft and, in effect, also would permit his conviction for the other offenses proved but not charged. The first sev-

eral lines of the instruction are in almost the precise words of one which we approved in *Giacomozzi v. People,* 72 Colo. 13, 209 Pac. 798. The latter portion is no more than an attempt, likely possible of more skillful expression, to elaborate upon what is first said and apply that principle to the case at bar. Our careful study, however, fails to import to its language the sinister meaning advanced by defendant or suggest, especially in the light of the other instructions, that the jury was by it in any manner confused or misinformed.

The defendant finally contends that the evidence is insufficient to sustain the verdict. Counsel argue that the conviction can only be sustained by inferences predicated upon prior inferences for which there is no substantial basis in fact. Our examination of the record does not so indicate, and without further detailing the circumstances, we may say that it would be difficult to understand how a jury could have found otherwise than it did by its verdict.

The judgment is affirmed.

MR. JUSTICE FRANCIS E. BOUCK not participating.