No. 19,602.

WILLIS LEVI STANMORE *v*. PEOPLE OF THE STATE OF COLORADO.
(362 P. [2d] 1042)

Decided May 15, 1961. Rehearing denied July 10, 1961.

Plaintiff in error, pro se.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. J. F. BRAUER, Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE DOYLE delivered the opinion of the Court.

PLAINTIFF in error, who will be referred to as defendant, was convicted of robbery and conspiracy to commit robbery and sentenced to the penitentiary for terms of 18 to 25 years on the robbery charge and 8 to 10 years on the conspiracy charge, the sentences to run concurrently. He seeks review by writ of error.

The information charges that on December 22, 1958, defendant robbed Tom A. Fortune and was then armed with a dangerous weapon, a gun, with intent if resisted to maim, kill or wound the said Fortune.

The trial was lengthy and the transcript contains extensive examination and cross-examination not essential to the present determination. We deem it necessary to set forth the essential facts only.

It appears from the evidence that on December 22, 1958, the defendant and another man entered the clothing store of Tom and John Fortune at 3795 Walnut Street in Denver, and announced: "This is a holdup!" The brothers Fortune, together with customers who were then in the store, were forced to go to the basement, after which Tom Fortune was forced to ascend to the store at gun point by the defendant who compelled him

to open the cash register and the safe and to place all the money in a sack. While this was taking place, another customer came in and was promptly forced into the basement. A third participant in the robbery came upon the scene after the initial entry by the defendant and his companion. Both Fortune brothers and one of the customers made a positive identification of the defendant. A fourth person thought that defendant was the same man, but was uncertain. In addition to the positive identification by the witnesses, two signed statements of the defendant were introduced in which he acknowledged his participation in the Fortune robbery, although claiming he was not inside the store but acted as a lookout on the outside. These statements were given following defendant's arrest on February 6, 1959, at Tacoma, Washington, and during his incarceration in that city. The first of the statements was written by the defendant in his own handwriting and states that he "was just out of Canon City and was just about broke"; that he ran into an acquaintance who proposed the robbery of Tommy's Market. Pursuant to agreement, the robbery of Tommy's Market was consummated, whereupon defendant and the others decided, and proceeded, to rob the Fortune store. A few days later they robbed the place referred to by the defendant in his first statement as a bar and cafe, later identified in his second statement as Petrino's Restaurant. The second statement, which was received in evidence, is typed and more detailed than the handwritten one, and was signed by defendant, notarized and witnessed.

Tommy's Market and Petrino's Restaurant were robbed within a few days of the Fortune Dry Goods Company robbery and the methods followed were almost identical. In each instance the customers were robbed, as in the Fortune transaction, and forced to the back of the store or into the basement. The owners in each instance were required to open the cash register and safe. At Petrino's Restaurant the employees were forced to

go upstairs and to lie on the floor, a method similar to that shown in the offense charged in the information.

According to the testimony of Tacoma officers, defendant was reluctant to make a statement during the initial interviews at Tacoma, Washington, and decided to do so only after the Tacoma authorities indicated willingness to return him to Denver. He had been involved in holdups in Tacoma as well as in Denver and preferred to take his chances in Denver. When the defendant was returned to Denver he denied participation in any of the robberies mentioned in his statements and said that he had signed such documents in order to get out of Tacoma; that since he had never actually committed the described crimes he was certain that he would be "turned loose" in Denver in spite of the statements. He said that in fact he knew nothing about any of the robberies and that he had learned details of them from the written reports forwarded by Denver police to Tacoma. It is noteworthy, however, that these police reports, also received in evidence, did not contain some of the details included in defendant's statements.

Defendant testified at the trial and sought to establish an alibi. Two witnesses testifying in his behalf claimed that he lived in the same house with them following his parole from Canon City and that he was present at their home during the entire morning of December 22, when the robbery of the Fortune Dry Goods Company occurred and that he had left that evening by train for Tacoma. Defendant denied any part in the robbery of the Fortune Dry Goods Company and the two other robberies mentioned in his statements and told the jury that he had signed such statements in the belief that he would be acquitted in the Denver prosecution. His statement that he left Denver by train on December 22 (the night before the Petrino robbery) was corroborated by a witness who testified that she too was getting on the train on the night of the 22nd and that the defendant helped her with her baggage.

The original "brief" filed by the defendant is strictly a homemade preparation from which it is most difficult to glean the points relied on for reversal. The one thing which emerges from the declarations of the accused contained in it is his abiding conviction that the cause should be reversed. In the reply brief filed on his behalf in response to that of the attorney general, the presentation is much more orderly and it is possible to conclude therefrom that there are three basic points offered in support of the defendant's contention that his conviction is founded upon prejudicial error. These are:

*First,* That the trial court erred in receiving in evidence testimony of offenses other than that charged in the information.

*Secondly,* That the evidence is legally insufficient to support the conviction.

*Thirdly,* That the testimony viewed in its entirety is based upon unreliable examination of photographs and on identification following views of photographs, so that the whole of the identification testimony is untrustworthy and not entitled to credit.

### I.

Important in considering whether the trial court erred with respect to the admission of evidence of other transactions is the fact that all of the robberies referred to occurred in Denver within the space of a few days and all were conducted by methods essentially similar, and, according to the written statements of defendant, all were committed in a series for the purpose of furnishing him with transportation money to Tacoma, Washington. Significant also is the fact that defendant himself introduced considerable testimony pertaining to such transactions. Through his counsel, he called the proprietors of Tommy's Market and Petrino's Restaurant as witnesses and by their testimony a description of the circumstances surrounding those two robberies became a part of the record. These witnesses testified, however, that they did not know whether the defendant partici-

pated in the robbery of their respective establishments.

The district attorney declared in open court that the testimony relative to these other "offenses" was for the limited purpose of establishing plan, scheme, design, and used the term "other offenses" and on one occasion "other crimes." The trial court clearly described such testimony as of "other transactions." The defendant failed to object to the words used, and his counsel in his opening statement and during his cross-examination of the people's witnesses and in presentation of the defendant's evidence repeatedly referred to such other transactions as "jobs" and as "robberies."

Upon consideration of the entire record, we are convinced that the court did not err in receiving the questioned evidence. It was admissible for the purpose for which it was offered. See *Bacino v. People,* 104 Colo. 229, 90 P. (2d) 5; *Perry v. People,* 116 Colo. 440, 181 P. (2d) 439; *Ray v. People,* 125 Colo. 381, 243 P. (2d) 762. Cf. *Kostal v. People,* 144 Colo. 505, 357 P. (2d) 70. Defendant places great reliance upon the recent decision of *Stull v. People,* 140 Colo. 278, 344 P. (2d) 455, where the procedure incident to reception and treatment of evidence of this character was emphasized. It was there pointed out that (1) the district attorney must inform the court of the purpose of the tendered evidence of other acts or transactions; (2) that the court is under an obligation to advise the jury at the time of the offer of the limited purpose for which the evidence may be considered; and (3) the court is required to instruct the jury of the limited purpose in its general charge.

In the case at bar these procedural requisites were observed and the only criticism possible from a careful scrutiny of the evidence would be the reference to "other offenses" rather than "other transactions." The trial court clearly cautioned the jury that defendant could not be convicted of any "offense" not charged in the information.

In view of the indiscriminate reference to "jobs" and "robberies" by defendant's counsel and in view of the fact that little effort was made to restrict the scope of the trial or the reception of evidence, we do not deem these relatively minor variances from the strict standards of the *Stull* case significant. In arriving at the conclusion that admission of the evidence complained of was not erroneous, we have been guided also by the pronouncements in *Neppin v. People,* 95 Colo. 192, 34 P. (2d) 71, and *Schneider v. People,* 118 Colo. 543, 199 P. (2d) 873.

## II.

It is manifest from the record that the evidence in this case is not only sufficient to sustain the conviction but is overwhelming. On one side of the scales is the extensive and positive testimony identifying the defendant as an active participant in the robbery charged in the information, fortified by the two signed statements of defendant, one of which was entirely prepared by him and the other, although typed, was sworn to by him and properly witnessed. In addition, there is the circumstance, established by defendant's witness, that the accused was in Denver on the 22nd of December. Moreover, he had a motive — money for traveling expenses. On the other side of the scales is defendant's alibi supported by his own testimony, weakened by the doubt cast upon his credibility by prior convictions, and by one witness handicapped by the same disability. Under such circumstances, it cannot be argued that the evidence was insufficient as a matter of law to satisfy the reasonable doubt standard. See *Bauer v. People,* 103 Colo. 449, 86 P. (2d) 1088.

## III.

Our discussion of the evidence and its legal sufficiency renders it unnecessary to consider the defendant's third point having to do with the alleged internal inconsistencies of the case. All such deficiencies or conflicts were

452

strictly jury questions resolved against defendant by the verdict.

The judgment is affirmed.