## No. 23145.

MINOR KENT KENNARD *v.* THE PEOPLE OF THE STATE OF COLORADO.
(465 P.2d 509)

Decided March 2, 1970.

ALFRED Z. CRADDOCK, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, JOHN P. MOORE, Deputy, AUREL M. KELLY, Special Assistant, for defendant in error.

*En Banc.*

MR. CHIEF JUSTICE MCWILLIAMS delivered the opinion of the Court.

MINOR KENT KENNARD and Charles Edward Givan were jointly charged, tried and convicted by a jury of the crimes of unlawful possession of marijuana and conspiracy. Givan was sentenced to a term of from four to eight years in the state penitentiary and Kennard to a term of from two to four years in the same institution. By this writ of error Kennard alone seeks reversal of his conviction.

Kennard asserts the following as reversible error: (1) the ruling by the trial court that evidence of another and similar transaction constituted admissible evidence and (2) the refusal by the trial court to direct a verdict of acquittal because of an alleged insufficiency of evidence tying him into either of the crimes charged. Brief reference to the evidence adduced upon trial will place these two matters in focus.

Trujillo, a police officer for the City of Pueblo, and Carter, a police informer, went into the Skyline Club, an after hours bottle club in Pueblo, at about 2:15 A.M. Givan was seated at the bar and Carter who apparently was acquainted with Givan introduced him to Trujillo. These three thereafter sat at a table in the club and had several drinks. The conversation then somehow got around to marijuana and Carter made inquiry as to whether Givan could get them some marijuana. After being assured by Carter that Trujillo "was okay," Givan agreed "to get us some." Givan then got up from the table and left the club.

Two police officers who were parked across the street testified that they saw Givan and Kennard leave the Skyline Club together and walk a short distance south of the club where they both got into a 1957 Oldsmobile, pink color. It was later established that this vehicle belonged to Kennard.

After remaining in the vehicle for a short time Givan and Kennard returned to the Skyline Club. It was Kennard who then suggested that he and Givan, along with Trujillo and Carter, retire "to a dark area in the rear

of the club." With the four of them in this darker retreat, Givan then proceeded to sell Trujillo three cigarettes (which by other testimony were established to be marijuana cigarettes) for five dollars. A brief discussion thereafter ensued concerning the possibility of obtaining a greater supply of marijuana and in response thereto Kennard stated that he only had enough for his personal use and that if more was to be obtained, they would have to go to Colorado Springs.

Trujillo and Carter then left the Skyline Club but returned about two hours later. Givan and Kennard were still in the club and further conversation took place as to the possibility of obtaining additional marijuana. The defendants again stated that they could get more, but that they would have to go to Colorado Springs to obtain it. Trujillo indicated, however, that he did not want to go to Colorado Springs and arrangements were then made for the four of them to meet once again at 6 o'clock A.M. at the LaSalle Cafe on B Street in Pueblo.

The four did rendezvous again at 6 o'clock A.M. in the LaSalle Cafe on the same morning. The defendants had not as of then obtained any additional marijuana, as Trujillo said he thought they would have, and accordingly he and Carter decided to accompany Givan and Kennard to Colorado Springs. The four then drove to Colorado Springs in Kennard's car, where after an unsuccessful effort or two, Kennard obtained three matchboxes filled with marijuana which he then sold to Trujillo for eighteen dollars. The four then made the return trip to Pueblo.

██ As indicated above, it is argued that the trial court committed prejudicial error in overruling the defendants' objection to the evidence relating to their trek to Colorado Springs. This evidence may well have been prejudicial in its effect, but it was not error to permit its introduction. Evidence of other and similar transactions is admissible for the purpose of showing plan, scheme, design, intent or guilty knowledge. This well-

recognized exception to the general rule that evidence tending to show that the accused has committed a crime wholly independent of the offense for which he is on trial is inadmissible has particular applicability where, as here, the so-called "other" transaction is actually but a part of one continuing transaction.

The fact that these events took place subsequent to the occurrences which formed the basis for the filing of the criminal information against these defendants is of no significance. As concerns the issue of intent and guilty knowledge and the relationship thereto of evidence of other offenses, what one does after his alleged commission of a criminal act may be as revealing as that which he has done before. *Chasse v. People,* 119 Colo. 160, 201 P.2d 378 and *Elliott v. People,* 56 Colo. 236, 138 P.39.

*Bacino v. People,* 104 Colo. 229, 90 P.2d 5 has particular applicability to the present controversy. In that case the defendant was charged with a larceny occurring in Colorado Springs. Upon trial evidence of a larceny occurring in Pueblo and therefore separated from the theft in Colorado Springs by not only some forty miles but also by three days in time was held to constitute admissible evidence. In so holding we declared:

"While as a general rule evidence tending to show that the accused has committed a crime wholly independent of the offense for which he is on trial is inadmissible, there is an exception, equally well settled, that it is competent to show that defendant had participated in similar illegal enterprises to prove criminal intent, plan or design and especially is that the case where, as here, the other transactions were so connected in point with the offense under investigation and so similar in character, that the same motive could be imputed to all of them."

In the instant case the similar and so-called "other" transaction occurring in Colorado Springs about five hours after the events which formed the basis for

the criminal prosecution in Pueblo county was really a part and parcel of one continuing transaction which began when the defendants met Trujillo and Carter in the Skyline Club about 2:15 A.M. and ended when they returned to Pueblo from their expedition to Colorado Springs in their successful search for more marijuana. There was no error in receiving this evidence.

The contention that the evidence is insufficient to support the verdict is also without merit. Laying aside for a moment the testimony concerning the trip to Colorado Springs, the People's evidence certainly warrants the inference that Givan obtained the marijuana which he sold to Trujillo from Kennard. This inference is bolstered by the statement allegedly uttered by Kennard just before the marijuana changed hands that the four of them should first go to a "dark area in the rear of the cafe." And that statement, coupled with the evidence regarding the excursion to Colorado Springs, certainly tends to also establish guilty knowledge on the part of Kennard as of the time of the sale in the Skyline Club and negates any suggestion that he was only an innocent bystander. The evidence supports the verdict.

Judgment affirmed.

MR. JUSTICE PRINGLE and MR. JUSTICE GROVES not participating.