## No. 24650

## James Howe v. The People of the State of Colorado
(496 P.2d 1040)

Decided May 15, 1972.

250

Taussig, McCarthy & Snyder, Paul Snyder, Jr., for plaintiff in error.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, Michael T. Haley, Assistant, Jack Hanthorn, Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE HODGES delivered the opinion of the Court.

Defendant James Howe was convicted of theft and conspiracy to commit theft. On writ of error, he alleges several grounds for reversal. In our view, none have merit. The judgment of the trial court is therefore affirmed.

Twenty-eight T.V. sets and two refrigerators were stolen from the warehouse of Allied Appliances, Inc. The prosecution's evidence revealed that defendant planned the theft. Defendant secured the services of one Bright who went to the warehouse on two occasions with a rented truck. The appliances were loaded on the truck with the assistance of a warehouse employee. Defendant sold the merchandise to unknown parties. Bright and the warehouse employee participated in the proceeds.

Where relevant, additional facts will be supplemented in the discussion of the issues presented.

I.

The defendant first argues that the theft statute under which he was charged, 1967 Perm. Supp., C.R.S. 1963, 40-5-2, is unconstitutionally vague and internally inconsistent and therefore void on its face. We do not agree. A statute is presumed to be constitutional and the one attacking its validity has the burden of establishing invalidity beyond a reasonable doubt. *Clark v. People,* 176 Colo. 48, 488 P.2d 1097; *Dunbar v. Hoffman,* 171 Colo. 481, 468 P.2d 742; *Love v. Bell,* 171 Colo. 27, 465 P.2d 118; *Flank Oil Co. v. Tennessee Gas Transmission Co.,* 141 Colo. 554, 349 P.2d 1005. The defendant here has not met this burden.

In determining whether or not a statute is unconstitutionally vague, this court has consistently adhered to the following generally accepted test. If a statute gives fair description of the conduct forbidden and men of common intelligence can readily apprehend the statute's meaning and application, it will not be declared unconstitutional for vagueness. *Self v. People,* 167 Colo. 292, 448 P.2d 619; *People v. Heckard,* 164 Colo. 19, 431 P.2d 1014; and

*Memorial Trusts, Inc. v. Beery,* 144 Colo. 448, 356 P.2d 884.

 1967 Perm. Supp., C.R.S. 1963, 40-5-2 meets this test. Subsections (1)(b)(i), (ii), (iii) and (iv) clearly delineate four acts which, if done with the intent specified in subsection (1)(c)(i), (ii) or (iii) constitute the crime of theft. Any person of common intelligence can readily comprehend the meaning and application of this definition. The words used by the legislature in drafting this statute are not ambiguous, nor do they require any extended or involved interpretation in order to arrive at their clear meaning.

 Nor do we find that the statute in question is internally inconsistent. The defendant correctly asserts that 1967 Perm. Supp., C.R.S. 1963, 40-5-2(1)(b)(i), (ii) and (iii) speak in terms of "exerts unauthorized control" or "obtains by deception control" or "obtains by threat control" while 1967 Perm. Supp., C.R.S. 1963, 40-5-2(3) provides:

"In every indictment or information charging a violation of this section, it shall be sufficient to allege that, on or about a day certain, the defendant committed the crime of theft by *unlawfully taking* a thing or things of value of a person or persons named in the indictment or information." (Emphasis added.)

 On this basis, the defendant argues that the requirements of the information as set forth in the above quoted subsection are inconsistent with the proscriptions of the prior substantive sections because one could "exert unauthorized control" over something of value yet not be guilty of an "unlawful taking." This is not a valid argument. It is elementary that when construing a statute, the statute must be read and considered as a whole. In addition, we held in *Dekelt v. People,* 44 Colo. 525, 99 P. 330.

". . . that the cardinal rule to be observed in construing a statute is to ascertain the intent of the legislature in passing it. . . ."

 When all of the subsections of 1967 Perm. Supp. C.R.S. 1963, 40-5-2 are read together, it becomes apparent that the intent of the legislature was to bring together in one statute most of the crimes formerly known by several

different names. Each of these former crimes had as a material element the unlawful depriving of a person of his property. What varied in the different crimes was the method used to achieve the deprivation. We perceive no inconsistency between the words used to describe the methods of deprivation with the intent to permanently deprive a person of a thing of value and the words "unlawfully taking."

*Black's Law Dictionary* (Revised 4th ed.) defines the word "take" as follows:

"To lay hold of; to gain or receive into possession; to seize; to deprive one of the use or possession of; to assume ownership."

"A 'taking' occurs when a person with a preconceived design to appropriate property to his own use obtains possession of it by means of fraud or trickery."

"The word take has many shades of meaning, precise meaning which it is to bear in any case depending on the subject with respect to which it is used."

 This illustrates that the three phrases utilized by the legislature in the substantive portions of the statute are encompassed by the phrase "unlawfully taking." Certainly no person of common intelligence is unable to understand the clear meaning and import of the two subsections. The use of two different words or phrases, each of which expresses the same common meaning, does not render a statute internally inconsistent. *See People v. Massey,* 312 P.2d 365 (Cal. 1957) in which a similar statute was construed and upheld.

## II.

The defendant's next two arguments are closely related. He argues that the information was fatally defective because it did not adequately apprise the defendant of the charges against him, and secondly, it was therefore erroneous for the trial court not to require the district attorney to file a formal bill of particulars.

The first count of the information charged the defendant with "feloniously, knowingly, wilfully and unlawfully" committing the crime of theft by taking "miscellaneous personal property" from the victim, Allied Appliances, Inc., with the

intent to permanently deprive said victim of the use and benefit of the said property having the value of more than one hundred dollars on August 28, 1968. In a second information, the defendant was identically charged in connection with another alleged theft on August 16, 1968. The trial on the second information was not scheduled to begin until after the conclusion of the trial on the first information. Before trial, the court granted the defendant's request for a bill of particulars. The district attorney furnished the defense with an inventory list, prepared by the victim, listing 30 items of property found to be missing from the victim's warehouse stock between July 31, 1968 and August 29, 1968. The list contained the brand name, model and serial number and price of each missing item. Except for two refrigerators, all the items were T.V. sets.

On the morning of trial, defense counsel attempted to obtain a statement as to which items on the list were taken on August 28, 1968. The district attorney informed the trial court that the People intended to prove that 17 color T.V. sets were taken on August 28th and that the remaining items were taked on August 16th. The trial on the August 28th theft proceeded on that basis.

■ It is our view that the information was sufficient to apprise the defendant of the charge he faced. As previously discussed, 1967 Perm. Supp., C.R.S. 1963, 40-5-2(3) sets forth the essential elements to be included in an information charging theft. The information here complies with those requirements and with the requirements of Crim. P. 7(c) and C.R.S. 1963, 39-4-3 and 4. Although the phrase "miscellaneous personal property" is broad, the itemized list of missing items furnished to defense counsel adequately narrowed that phrase. See our recent decision in *Edwards v. People*, 176 Colo. 478, 491 P.2d 566.

■ As to the trial court's failure to require the district attorney to file a formal bill of particulars, it is well established by Colorado law that the granting or denial of a bill of particulars is within the sound discretion of the trial court, and in the absence of an abuse of discretion, the trial

court's ruling will not be disturbed on review. *Self v. People, supra, Balltrip v. People,* 157 Colo. 108, 401 P.2d 259; *Johnson v. People,* 110 Colo. 283, 133 P.2d 789; *Stewart v. People,* 86 Colo. 456, 283 P. 47.

In our view, the trial court did not abuse its discretion in not requiring a formal bill of particulars under the circumstances here.

We further note in answer to another of the defendant's arguments that "the test of the sufficiency of an indictment is not determined by whether the indictment alone will protect the accused against the possibility of double jeopardy." *Sepulveda v. United States,* 244 F. Supp. 598 (D. Colo. 1965); *Flores v. United States,* 338 F.2d 966 (10th Cir. 1964). Also *see Mora v. People,* 172 Colo. 261, 472 P.2d 142, which quotes with approval the following statement from *Casias v. United States,* 331 F.2d 570 (10th Cir. 1964):

"Nor need an indictment or information plead an offense in such detail as to be self-sufficient as a bar to further prosecution for the same offense. The judgment constitutes the bar. *Martin v. United States,* 10 Cir., 285 F.2d 150. And the extent of the judgment may be determined from an examination of the record as a whole."

III.

Next, the defendant urges reversal on the ground that when the People presented evidence of the similar transaction which occurred on August 16, 1968, the court erred in using the phrase "similar offense" in his oral instruction to the jury as to the limited purpose for which such evidence was admissible. In this charge, given when the evidence was presented, the trial judge used the word "offense" rather than the word "transaction" several times.

In *Stull v. People,* 140 Colo. 278, 344 P.2d 455, this court discussed the possibilities of prejudice to the defendant which might arise because of the use of phrases such as "similar offenses," "other offenses," "similar crimes" and words of similar import. The court set forth a recommended procedure to be followed when evidence of this type is

offered. In the present case, the trial court followed this procedure except for the last of these points. ". . .the offer of the prosecutor and the instructions of the court should be in carefully couched terms. They should refer to 'other transactions,' 'other acts,' or 'other conduct'. . . ."

Testimony of similar transactions is admissible only where it is probative of design, scheme, plan, motive or intent. *Kennard v. People,* 171 Colo. 194, 465 P.2d 509.

In our view, the only deviation from the *Stull* procedure was the use of the word "offense" when the trial court orally instructed the jury at the time the evidence was offered. In the instructions to the jury given after the close of the evidence, the trial court properly used the word "transactions." In both instructions, the jury was clearly cautioned that the defendant could not be convicted in connection with any act not charged in the information. *See Stanmore v. People,* 146 Colo. 445, 362 P.2d 1042.

The evidence of the August 16th transaction was clearly admissible as probative of common design, scheme, or plan. The same *modus operandi* was used on both occasions to relieve the same victim of its property. The deviation from *Stull* was corrected by curative instructions. After considering this entire record and the nature of the evidence, we are convinced that the defendant was not prejudiced by the trial judge's use of the word "offense" when he gave the jury a cautionary oral instruction at the time evidence of another transaction was introduced. Therefore, it was not reversible error.

## IV.

The defendant's next assignment of error is that the trial court erred by failing to declare a mistrial when the deputy district attorney handed two Crim. P. 16(b) statements to defense counsel in the presence of the jury. Bright, one of the accomplices of the defendant, testified for the People. On cross-examination, defense counsel requested and received a statement which Bright had previously given to the police. Later, just before trial recessed for the day, the district attorney handed defense counsel two additional statements

made by Bright. The latter statements were tendered in the presence of the jury whereas the first had been requested and tendered at the bench out of the view of the jury. When trial resumed the next morning, defense counsel moved for a mistrial because two statements were tendered to him in the presence of the jury. The court denied the motion holding that even with regard to the first statement, defense counsel had made no request that it be given to him outside the presence of the jury.

Rule 16(b) is silent as to the method in which statements are to be tendered to defense counsel. This is a matter which, in our view, is best left to the sound discretion of the trial judge. The facts before us present no showing of an abuse of discretion in this case. The declaring of a mistrial is also within the sound discretion of the trial court and should not be granted except in extraordinary circumstances which clearly demonstrate undue prejudice to the defendant. *Kelly v. People*, 121 Colo. 243, 215 P.2d 336; *Brown v. People*, 132 Colo. 561, 291 P.2d 680. On this point, the record was minutely examined with the resulting determination that the defendant was not prejudiced and that the trial court therefore did not commit error in refusing to grant a mistrial.

We have considered the decisions of the several Federal Courts of Appeals which have considered the same question in relation to the Jenck's Act 18 U.S.C. § 3500, which is the Federal equivalent of our Crim. P. 16(b). We are in accord with those decisions which have left the procedure to be followed to the sound discretion of the trial judge or have clarified the procedure to be followed in future cases. *Beaudine v. United States*, 414 F.2d 397 (5th Cir. 1969); *Pallotta v. United States*, 404 F.2d 1035 (1st Cir. 1968); *United States v. Nielsen*, 392 F.2d 849 (7th Cir. 1968); *United States v. Gardin*, 382 F.2d 601 (2nd Cir. 1967).

In future cases, we would find the procedures suggested in *United States v. Gardin, supra*, acceptable, although not mandatory.

"The procedure to be followed should be left to the

discretion of the trial judge. While we therefore lay down no hard and fast rule, we do suggest the following which generally may meet the positions of both parties. After the completion of the witness' direct testimony and before cross-examination has been concluded, the defendant will state that he requests leave to make a motion in the absence of the jury; the trial judge will then excuse the jury, and, in its absence, the defendant will move for disclosure of Jenck's Act [Crim. P. 16(b)] material. Therafter all steps through the delivery to the defendant of the statement or report, or the portions thereof, to which the defendant is found to be entitled, and including the allowance of a reasonable time to the defendant to examine the material, will take place while the jury is still absent. If, thereafter, the defendant decides to make use of any of the material for cross-examination of the witness, he will be permitted to do so only upon condition that he state preliminarily to the court and jury that he is about to question the witness on the basis of a written statement or report which the Government [People] has made available to the defendant as required by law. This is to negative any inference that the Government had been covering something up and will precede compliance with the general rule of evidence for the protection of the witness which requires the laying of a proper foundation for the introduction of a past contradictory statement."

The remaining assignment of error is without merit, and we perceive no value in any discussion of it.

Judgment affirmed.