No. 26346

The People of the State of Colorado, by and through their duly appointed representatives, Robert L. Russel, District Attorney and Thomas J. Barton, Deputy District Attorney v. The District Court for the Fourth Judicial District, State of Colorado, The Honorable Donald E. Campbell, as one of the Judges of the District Court

(521 P.2d 1254)

Decided May 6, 1974.

Robert L. Russel, District Attorney, Thomas J. Barton, Deputy, for petitioners.

J. Gregory Walta, for respondents.

MR. JUSTICE DAY delivered the opinion of the Court.

By way of an original proceeding, C.A.R. 21, the People challenge a ruling entered by respondent court which held 1971 Perm. Supp., C.R.S. 1963, 40-3-102(1)(d), a portion of the homicide statute, unconstitutional on the ground that it was facially void for vagueness. Due to the great public importance of the ruling and with conflicting holdings in other district courts, we issued an order to show cause why a writ of mandamus should not issue directing the respondent court to reinstate the charge.

I.

The constitutional principle that statutes must clearly apprise the citizen of the nature of the proscribed illegal conduct is firmly embedded in our decisional law. Though the doctrine of vagueness has its roots in the due process clause requirement that there be adequate notice of what conduct is proscribed, *People v. Young,* 139 Colo. 357, 339 P.2d 672 (1959), additional interests are served as well. Inherent in any law which cannot be understood is the opportunity for uneven enforcement and jury confusion. *Dominguez v. Denver,* 147 Colo. 233, 363 P.2d 661 (1961). The gravity of these potential injustices prompts us to scrutinize closely any statute where vagueness is alleged. *People v. Heckard,* 164 Colo. 19, 431 P.2d 1014 (1967).

On the other hand, it is not the role of this court to act as overseer of all legislative action and declare statutes unconstitutional merely because we believe they could be drafted better or more fairly applied. Accordingly, every statute which we scrutinize is presumed to be constitutional, *Howe v. People,* 178 Colo. 248, 496 P.2d 1040 (1972), and unless the statute infringes a fundamental right — such as the right to vote — *Jarmel v. Putnam,* 179 Colo. 215, 499 P.2d 603 (1972), the assailant of a statute carries the continued burden of showing unconstitutionality. *People v. Summit,* 183 Colo. 421, 517 P.2d 850 (1974); *Colorado Chiropractic Ass'n. v. Colorado,* 171 Colo. 395, 467 P.2d 795 (1970). Where a statute is capable of two interpretations, we will interpret it

so as to satisfy constitutional dictates. *People v. Sneed,* 183 Colo. 96, 514 P.2d 776 (1973). Guided by these principles, we hold that this portion of the first-degree murder statute, 1971 Perm. Supp., C.R.S. 1963, 40-3-102(1)(d), is not constitutionally void for vagueness.

## II.

In *Howe v. People,* 178 Colo. 248, 496 P.2d 1040 (1972), we reiterated our long-standing test for vagueness:

"* * * If a statute gives fair description of the conduct forbidden and men of common intelligence can readily apprehend the statute's meaning and application, it will not be declared unconstitutional for vagueness. * * *"

*See also Smith v. Goguen,* 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974); Note, *The Void-for-Vagueness Doctrine in the Supreme Court,* 119 U.Pa.L.Rev. 67 (1960). The statute under consideration states:

"(1) A person commits the crime of murder in the first degree if:

* * *

"(d) Under *circumstances manifesting extreme indifference to the value of human life, he intentionally engages in conduct which creates a grave risk of death to a person other than himself,* and thereby causes the death of another." (Emphasis added.)

The respondent court held that this section was void for vagueness. On the record before us, it appears the ruling was based on the supposed inability to distinguish this crime from second-degree murder, 1971 Perm. Supp., C.R.S. 1963, 40-3-103(1)(a) and manslaughter, *id.,* 40-3-104(1)(a).

We hold that the statute meets the *Howe* test and that men of common intelligence can readily apprehend the distinguishing characteristics.

The second-degree murder statute provides:

"40-3-103. Murder in the second degree. (1) A person commits the crime of murder in the second degree if:

"(a) He causes the death of *a person intentionally,* but *without premeditation;* *" (Emphasis added.)

Manslaughter is defined by section 40-3-104:

"Manslaughter. (1) A person commits the crime of manslaughter if:

"(a) He *recklessly* causes the *death of another person;* \*."
(Emphasis added.)

In contrast, the essential elements of the first-degree murder statute require:

(1) that the defendant *manifest extreme indifference to the value of human life;* and

(2) that the defendant *intentionally* engage *in conduct which creates a grave risk of death to a person other than himself;*

(3) thereby causing the death of another.

As we read the section in question, the element which distinguishes it from second-degree murder is that the latter degree requires that the perpetrator possess the intent to take the life of a particular person while this first-degree murder statute does not. The element of "extreme indifference to human life," by definition, does not address itself to the life of the victim, but to human life generally. Conversely, though the statute requires that the conduct which creates a grave risk of death be intentional, the use of "intentionally" here does not necessarily mean that the intent be to take the life of a particular person. Indeed, if such were the case, there would be but little difference between this statute and the other sections of the first-degree murder statute, *see* 1971 Perm. Supp., C.R.S. 1963, 40-3-102 (1)(a). Furthermore, our statutes define "intentionally" as "when his conscious object is to cause that result or to engage in that conduct," 1971 Perm. Supp., C.R.S. 1963, 40-1-601(6), which we read to mean that the conduct creating the grave risk of death be consciously done.

Again, in contrast, the second-degree murder statute states in part that "he cause the death of a person *intentionally,* but without premeditation." 1971 Perm. Supp., C.R.S. 1963, 40-3-103(1)(a). We believe the only construction which that phrase can be given is that the intent be to cause the death of a *particular* person. Otherwise, there would be no need to distinguish between 1971 Perm. Supp., C.R.S. 1963, 40-3-102(1)(a), which by definition is the

premeditated taking of *a* person's life, and second-degree murder. That the legislature intended to make this distinction is beyond doubt, *People v. Sneed,* 183 Colo. 96, 514 P.2d 776 (1973), and we must give that intent meaning. *People v. Lee,* 180 Colo. 377, 506 P.2d 136 (1973). This distinction between the two statutes, one directed toward the intentional — though not premeditated — taking of a particular life, the other directed to the intentional endangering of human life, is adequate to give a sufficient basis for all men of common intelligence to distinguish the crimes.

### III.

As to the distinction between the section involved and manslaughter, it is obvious the two statutes impose different standards of care. The manslaughter statute requires that the cause of death be *recklessly* done. 1971 Perm. Supp., C.R.S. 1963, 40-3-104(1)(a). "Recklessly" is defined by 1971 Perm. Supp., C.R.S. 1963, 40-1-601(8):

"A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware or *reasonably should be aware of* and consciously disregards a *substantial* and *unjustifiable* risk that the result will occur or that the circumstance exists. * * *" (Emphasis added.)

In comparison, an extreme indifference to human life is clearly a more culpable standard of conduct, especially where necessarily coupled with the additional requirement that there be created a *grave* risk of death.

This statute is not void for vagueness, and the rule is therefore made absolute.

MR. CHIEF JUSTICE PRINGLE does not participate.