589 P.2d 494 (1978)
The PEOPLE of the State of Colorado, Plaintiff-Appellee,
v.
Sun Ae ELLIS, Defendant-Appellant.
No. 76-917.
Colorado Court of Appeals, Division III.
August 24, 1978.
As Modified On Denial of Rehearing September 21, 1978.
Certiorari Denied January 22, 1979.
*495 J. D. MacFarlane, Atty. Gen., David W. Robbins, Deputy Atty. Gen., Edward G. Donovan, Sol. Gen., Lynne M. Ford, Asst. Atty. Gen., Denver, for plaintiff-appellee.
Rollie R. Rogers, Colorado State Public Defender, James F. Dumas, Jr., Chief Deputy State Public Defender, Lee J. Belstock, Deputy State Public Defender, Denver, for defendant-appellant.
PIERCE, Judge.
Defendant, Sun Ae Ellis, was convicted of second degree murder in connection with the death of her four year old stepson, Thad. She appeals and we reverse.
On April 14, 1976, the police responded to a call from defendant's husband, John Ellis. When they arrived at the Ellis apartment, they found Thad lying dead on a mattress. The child had a large bump on the back of his head, a bruise on his forehead, and dried blood in one ear. Both defendant and her husband were arrested for questioning, and defendant was charged with second degree murder.

I.
Defendant contends that certain photographs introduced by the People were so shocking, and their probative value so marginal, that their admission was error. We agree as to four of the eight photographs.
Photographs V-1 and V-2, depicting Thad's body as it lay at the scene, were not objected to. Moreover, such photographs are generally admissible to show the circumstances surrounding the death. See People v. Pearson, Colo., 546 P.2d 1259 (1976); People v. Jones, 184 Colo. 96, 518 P.2d 819 (1974). Similarly, photographs A-1 and A-2, which were not objected to and which showed Thad's body on a table at the morgue, were also properly admitted. See People v. Steele, Colo., 563 P.2d 6 (1977); Hinton v. People, 169 Colo. 545, 458 P.2d 611 (1969).
However, the broad discretion which the trial court has in admitting shocking and inflammatory photographs is not unlimited, and that discretion was abused here when the court permitted the jury to view photographs A-6 through A-9. Each of these four photographs was taken during the course of the autopsy performed on Thad. Photographs A-6 and A-7 are views of the child's brain still attached to the body, with the top of the head removed and the face obscured by blood and tissue. A-8 shows the interior of the skull with the brain absent, and A-9 is a full length view of Thad's body split open from the neck to the crotch, exposing various internal organs.
These photographs were ostensibly introduced to show that the cause of death was the presence of subdural hematomas. However, defendant's own expert agreed that the cause of death was bleeding from these hematomas, and the only real question was whether such bleeding could have been induced by an accidental fall, a question over which the experts were divided.
We fail to see how these photographs shed enough light on the question of accident to counteract the passion and prejudice which they must have generated. As the Supreme Court said in Archina v. People, 135 Colo. 8, 307 P.2d 1083 (1957):
"[I]t is the duty of the District Attorney to present all available facts so that the jurors may, through their mental processes, arrive at the guilt or innocence of the defendant. It is not his duty or right to produce or present evidence that has no probative value and that serves only to arouse the passions and prejudices of the jurors. These pictures do not serve to stimulate the mental processes of the jurors, but only to arouse their passions and prejudicesand to cause them to abandon their mental processes and give expression to their emotions."
This language is equally applicable to the four photographs here, and the trial court erred in admitting them.
*496 We will address two additional issues because of their likelihood of appearing at retrial.

II.
Defendant contends that evidence of prior abuse, including expert testimony to the effect that Thad was a "battered child," should have been excluded. We disagree.
John Ellis testified to several incidents in which defendant spanked or slapped Thad in a manner to which Mr. Ellis objected, including one incident in which Thad suffered a broken arm. Statements made by defendant corroborated the broken arm incident, and also established that defendant slapped Thad on the morning of his death.
Dr. Cyrus Partington, a radiologist called by the prosecution, testified that his examination of Thad's X-rays indicated several past fractures of differing age. It was Dr. Partington's opinion that Thad suffered from the "battered child syndrome," a medical diagnosis based primarily on radiological evidence inconsistent with explanations based on accidents. See generally Kempe, Silverman, Steele, Droegemueller & Silver, The Battered Child Syndrome, 181 J.A.M.A. 17 (1962).
This evidence was properly admitted. It is generally true that evidence of a defendant's past conduct cannot be introduced to show that he has a propensity for such conduct. See Stull v. People, 140 Colo. 278, 344 P.2d 455 (1959). However, evidence of prior incidents may be admitted for the limited purpose of showing design, scheme, plan, motive or intent. Howe v. People, 178 Colo. 248, 496 P.2d 1040 (1972). And, where as here, defendant's theory of the case is that death was accidental, and where there is evidence of exclusive parental custody during the relevant period, evidence of past abuses is admissible to prove intent, and to disprove accident. See People v. Hosier, 186 Colo. 116, 525 P.2d 1161 (1974); People v. Henson, 33 N.Y.2d 63, 349 N.Y.S.2d 657, 304 N.E.2d 358 (1973). Since proper limiting instructions were given, the court did not err in admitting this evidence. Stull v. People, supra.
Neither was it error to permit Dr. Partington's "battered child syndrome" testimony. That diagnosis was within Dr. Partington's field of expertise, and represented an expert medical opinion based on facts in evidence. See People v. Jackson, 18 Cal.App.3d 504, 95 Cal.Rptr. 919 (1971); People v. Henson, supra; McCoid, The Battered Child and Other Assaults Upon the Family: Part I, 50 Minn.L.Rev. 1 (1965).

III.
Defendant argues that she is entitled to the benefits of certain statutory changes, and that because of these changes, any retrial of this matter must be limited to manslaughter. We disagree.
Defendant was convicted of second degree murder under § 18-3-103(1)(b), C.R.S. 1973, which required only intent to cause serious bodily injury. Effective with respect to offenses occurring on or after July 1, 1977, this section was repealed, Colo.Sess. Laws 1977, ch. 224 at 971, and the remaining sections on homicide altered considerably. Colo.Sess.Laws 1977, ch. 224 at 960. Defendant argues that under the doctrine of People v. Thomas, 185 Colo. 395, 525 P.2d 1136 (1974), she is entitled to the "benefits" of this amendatory legislation by being subject to retrial only on the next lowest degree of homicidemanslaughter. Section 18-3-105, C.R.S.1973.
However, Thomas involved changes in criminal penalties, and the argument that it should be extended to changes in substantive criminal definitions was addressed and rejected by the Supreme Court in People v. Marlott, Colo., 552 P.2d 491 (1976). Since we view Marlott as controlling, we decline to limit the scope of any retrial.
We have considered the balance of defendant's contentions, and find them to be without merit.
Judgment reversed and cause remanded for a new trial.
RULAND and VAN CISE, JJ., concur.