Ron DAVIS, S.W. Posey, Henry Golemba, Wilbur T. Raven, Billie J. Raven, L.A. Overton, Michael Troxler, Richard M. Troxler, David J. George, Alfrieda Horvath, James D. Pritchett, and Cynthia I. McFarlin, Plaintiffs-Appellees,

v.

IZAAK WALTON LEAGUE OF AMERICA and The Pikes Peak Chapter No. 34 of the Izaak Walton League of America, Inc., a Colorado non-profit corporation, Defendants-Appellants.

No. 84CA0623.

Colorado Court of Appeals,
Div. II.

Dec. 5, 1985.

Rehearing Denied Jan. 9, 1986.

Certiorari Denied March 31, 1986.

Strand & Meadows, P.C., William G. Webb, Edwin Strand, Colorado Springs, for plaintiffs-appellees.

Warren, Mundt & Martin, P.C., Robert B. Warren, Colorado Springs, for defendants-appellants.

SMITH, Judge.

Defendant, Izaak Walton League of America, Inc., appeals a judgment of the trial court finding that its use of its property as a firing range constitutes a public nuisance and ordering it to cease that use until it lowers the levels of dust from its access road and brings the noise levels within statutory noise limits. Defendant argues that the trial court erred in finding that its use of its property constituted a public nuisance. It contends that the public nuisance issue was not properly before the court, that the court employed improper methods for measuring noise levels, that the court erroneously determined that plaintiffs' subdivision was a residential zone, and that the court erroneously based its finding of public nuisance upon fugitive dust. We reject each of these arguments and affirm the judgment.

Plaintiffs are residents of Rolling Hills Ranch Estates which is a subdivision in rural El Paso County developed in 1969. Defendant purchased acreage adjacent to the subdivision's east edge in 1979 and constructed a shooting range and clubhouse facilities. The shooting range is oriented in a direction that focuses all gunfire away from plaintiffs' property. The trial court found there is no danger to plaintiffs by virtue of the discharge of firearms.

Defendants constructed a dirt access road from the state highway to its facilities. The trial court found that, when use of defendant's facilities is at its peak, its access road carries over 200 cars per day and that this causes dust to travel onto plaintiff's property.

At the time of trial, defendant's range was open daily for shooting from 8:00 a.m. to 10:00 p.m.—on some occasions, shooting started as early as 6:00 a.m. and lasted as late as 2:00 a.m. During shotgun competitions, contestants fire at least 125 shots every twelve minutes.

The trial court found that noise emitted by guns fired at defendant's range is of a periodic or impulsive nature. The court therefore found the "impulse" mode the correct means to measure these noises.

Sound measuring devices operating in the "impulse" measurement mode recorded a sound pressure differential from 55 to 80 decibels using an A-weighted scale.

The trial court concluded that the subdivision where plaintiffs reside is a "residential zone" as defined in § 25–12–102(6), C.R.S. (1982 Repl.Vol. 11). It further found that noise levels from defendant's shooting range exceeded the statutory limits set out in § 25–12–103, C.R.S. (1982 Repl.Vol. 11) and that there was, therefore, a prima facie showing that a public nuisance existed. The court likewise concluded that the fugitive dust emissions emanating from defendant's property also constituted a public nuisance.

The trial court determined that plaintiffs had failed to establish that defendant's use of its property constituted a private nuisance, but it nevertheless concluded that a public nuisance existed. On that basis, the court enjoined defendant's further use of its property as a shooting range until it remedies the fugitive dust problem and brings the noise from discharging firearms within statutory limits of § 25–12–101, et seq., C.R.S. (1982 Repl.Vol. 11).

## I.

■ Defendant first argues that since there was no allegation in the complaint of a public nuisance, only the issue of private nuisance was properly before the court. This argument is without merit.

C.R.C.P. 15(b) in part provides that:

"[W]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; *but failure so to amend does not affect the result of the trial of these issues.*" (emphasis supplied).

Here, plaintiffs alleged in their complaint facts which they believed constituted nuisance. The trial court heard evidence under the public nuisance statute § 25–12–101, et seq., C.R.S. (1982 Repl.Vol. 11) concerning decibel measurements of noise emanating from defendant's property. This statute in essence provides that noise levels in excess of those specifically permitted in various zones, such as residential, commercial, light industrial and industrial, shall be considered public nuisances which may be ordered abated by the courts of this state. Defendant did not object to the reception of evidence under this statute.

We therefore hold that defendant impliedly consented to trial of the public nuisance issue. Under these facts, the substantive law provides relief upon that theory; thus, the original theory of the pleader is not binding on the court. *See Ward v. National Medical Ass'n,* 154 Colo. 595, 392 P.2d 162 (1964).

## II.

Defendant next argues that the trial court erred in basing its findings on noise levels established by plaintiffs' expert witness. Defendant claims that plaintiffs' expert failed to establish that the measuring devices he used met statutory requirements.

Section 25–12–102(2), C.R.S. (1982 Repl.Vol. 11) provides that " 'db(A)' means sound levels in decibels measured on the 'A' scale of a standard sound level meter having characteristics defined by the American National Standards Institute, Publication S1.4—1971, and approved by the Industrial Commission of Colorado."

■ Plaintiffs' expert testified that the sound level meter he employed complied with the above statute. He stated that it was "A-weighted" and had the characteristics which met requirements of the American National Standards Institute (ANSI) publication referred to in the statute. There was no evidence that the Industrial Commission ever adopted any standards for such measuring devices, much less that any standard varied from those of ANSI. When construing a statute, we

must read and consider it as a whole so that we may ascertain the intent of the General Assembly in passing it. *Howe v. People,* 178 Colo. 248, 496 P.2d 1040 (1972).

We conclude that compliance with ANSI standards was sufficient action by the Industrial Commission requiring standards greater than the ANSI standard. We reach this conclusion based upon the reasoning that, only by adopting standards more stringent than those of the ANSI, could the Industrial Commission's approval of such devices have any meaning.

### III.

Defendant next argues that the trial court erred in measuring noise by the "impulse mode" to determine maximum permissible noise levels emitted by defendant's shooting range. Section 25–12–103(3), C.R.S. (1982 Repl.Vol. 11) provides that the maximum permissible noise levels for periodic, impulsive, or shrill noises shall be five db(A) less than the maximum levels for other noises.

■ Defendant asserts that the statutory five decibel reduction in permissible noise levels for impulsive, periodic, or shrill noises provided by § 25–12–103(3) indicates a legislative intent to measure those noises by the so-called "slow mode" standard rather than by the "impulse mode." We hold that, inasmuch as the statute is silent on this issue, it is for the trial court, as trier of fact, to determine which method best measures the level of a given noise.

■ Statutory language should be given its familiar and generally accepted meaning; forced, subtle, strained, or unusual interpretations are unacceptable where the words are plain, their meaning clear, and no absurdity is involved. *In re Incorporation of Town of Eastridge v. City of Aurora,* 41 Colo.App. 299, 590 P.2d 72 (1978), *aff'd,* 198 Colo. 440, 601 P.2d 1374 (1979).

■ Defendant's interpretation of the statute is strained and would require us to imply one standard of measuring noise when the statute is otherwise silent on which mode to use. Accordingly, we hold that the determination of which mode to use to measure noise levels is a question of fact to be determined from scientific testimony concerning whether the sounds are impulsive, shrill, or periodic and concerning what mode of measurement is proper for that sound. Further, the trial court's findings here that the "impulse mode" is the proper measure and that the results of that measure exceed the maximum statutory level are amply supported by the record; hence, we will not disturb them. *Page v. Clark,* 197 Colo. 306, 592 P.2d 792 (1979).

### IV.

■ Defendant lastly argues that the evidence fails to support either of the trial court's findings that plaintiffs' subdivision was a "residential zone" as defined by § 25–12–102(6) or that fugitive dust from defendant's access road constitutes a public nuisance. These findings are amply supported by the record, and thus, we decline to disturb them. *Page v. Clark, supra.*

Section 25–12–102(6) defines a "residential zone" as an area of single-family or multifamily dwellings. Here, the trial court exercised its opportunity to view plaintiffs' subdivision, and testimony indicated that some 50 families lived within a one-mile radius. Finally, plaintiffs adduced evidence of substantial dust pollution travelling from defendant's access road onto plaintiff's property. This evidence was uncontroverted.

The judgment is affirmed.

KELLY and BABCOCK, JJ., concur.