PEOPLE of the State of Colorado,
Plaintiff-Appellee,

v.

John William BOSSERT,
Defendant-Appellant.
(Two Cases).

Nos. 83SA400, 84SA69.

Supreme Court of Colorado,
En Banc.

June 16, 1986.

Rehearing Denied Aug. 25, 1986.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Clement P. ˙Engle, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Wade H. Eldridge, Denver, for defendant-appellant.

KIRSHBAUM, Justice.

In this consolidated appellate proceeding the defendant, John William ˙Bossert, appeals his convictions by jury in three cases of several counts of unlawful possession of altered motorcycle parts, in violation of section 42–5–102(2), 17 C.R.S. (1981).[1] Two of the cases, docketed at trial as 82CR158 and 82CR449, were tried together.[2] The appeal of that consolidated proceeding, in which the defendant was convicted of seven separate offenses, is denominated 84SA69. The appeal of the third case, docketed at trial as 82CR157, is denominated 83SA400. Because both appeals challenge the constitutionality of section 42–5–102(2), we have consolidated them for review.[3]

Pending appeal, the cases were remanded to the trial court, upon the defendant's request, to permit the defendant to file a motion pursuant to Crim. P. 35 challenging his convictions in 82CR449 for failure to join that case with 82CR157. The trial court granted the motion in part and ordered concurrent sentences in all three cases. Both the defendant and the People appeal that ruling.

We affirm the judgments of conviction in both cases, and disapprove the trial court's order imposing concurrent sentences.

## I

Case 83SA400—trial court case 82CR157 —arose from the defendant's sale of a mo-

---

**1.** At the time of the informations filed herein, § 42–5–102(2) provided that it was a class four felony to remove, change, alter, or obliterate the vehicle identification number, manufacturer's number, or engine number of an automobile part, or to possess such a part with knowledge of such altered number.

Section 42–5–102(2) was amended in 1981. The changes therein reflect our opinion in *People v. Sequin,* 199 Colo. 381, 609 P.2d 622 (1980), where we held that § 42–5–102(2) requires an intentional act. Section 42–5–102(2) now reads:

> Except as necessary to effect legitimate repairs, any person who *intentionally* removes, changes, alters, or obliterates the vehicle identification number, manufacturer's number, or engine number of an automobile or automobile part or who possesses an automobile or automobile part and knows or has reasonable cause to know that it contains such a removed, changed, altered, or obliterated vehicle identification number, manufacturer's

number, or engine number commits a class 4 felony and shall be punished as provided in section 18–1–105, C.R.S.

(emphasis added).

Section 42–5–101(1) defines "automobile" as "all vehicles of whatever description propelled by any power other than muscular, except running on rails." Motorcycles are, therefore, covered under the Automobile Theft Law, §§ 42–5–101 to –109, 17 C.R.S. (1984).

**2.** As was done in the trial court, the consolidated cases of 82CR158 and 82CR449 will hereafter be referred to collectively as 82CR449.

**3.** Because both cases challenged the constitutionality of § 42–5–102, the cases came before this court on direct appeal pursuant to § 13–4–110(1)(a), 6 C.R.S. (1973). On March 12, 1985, this court granted the defendant's motion for joinder of cases for purposes of oral argument and decision.

torcycle engine on April 12, 1981, to Jeffrey Hastings. The bill of sale contained a notation written by the defendant that one part of the engine—a crank case—never had a serial number. Several of Hastings' friends informed him that the crank case contained what appeared to be an obliterated identification number. In October of 1981, Hastings informed Lakewood police officer Detective Anthony Bogacz of the April transaction. An information charging the defendant with a single count of unlawful possession of an altered motor vehicle part was filed in November of 1981, and a jury found the defendant guilty of that charge on May 5, 1983.

The defendant's trial attorney filed a motion for new trial on behalf of the defendant asserting, among other grounds, that section 42–5–102(2) was unconstitutional. The defendant, acting *pro se,* also filed a motion for new trial, asserting that he had received ineffective assistance of counsel.

██ The trial court denied both new trial motions, and the defendant appealed. Thereafter, while this case was on appeal, the defendant filed three separate motions for relief pursuant to Crim. P. 35 in the trial court, which motions were denied by the trial court.[4]

4. The defendant's first Crim.P. 35 motion alleged that § 42–5–102(2) was unconstitutionally vague and overbroad, that § 42–6–117 and § 42–5–107 permit the Department of Motor Vehicles or the police to legitimize conduct otherwise illegal under § 42–5–102(2), and that the defendant was denied effective assistance of counsel. The defendant's second Crim.P. 35 motion focused on the previously argued conflict between § 42–5–102(2) and § 42–5–107. His third Crim.P. 35 motion alleged that because § 42–5–102(2) classifies as a felony the same conduct which § 18–5–305 classifies as a misdemeanor, his conviction under the former statute denied him equal protection of the law.
 The People correctly assert on appeal that the trial court lacked jurisdiction to rule upon these Crim.P. 35 motions, all of which were filed after the notice of appeal had been filed. *See People v. District Court,* 638 P.2d 65 (Colo.1981); *People v. Jones,* 631 P.2d 1132 (Colo.1981) (and cases cited therein). The defendant, however, does not appeal the trial court's denial of these motions.

The defendant raises three grounds for reversal of his conviction in 82CR157: section 42–5–102 is unconstitutionally vague; the defendant was denied effective assistance of counsel; and section 42–5–102 permits an unconstitutional delegation of power.

## II

In case 84SA69, the defendant appeals seven convictions of unlawful possession of altered motor vehicle parts in the consolidated trial of cases 82CR158 and 82CR449. Case 82CR158 arose when the defendant filed an application with the Department of Motor Vehicles (the Department) for a bond title on a homemade motorcycle in June of 1981.[5] One of the parts to be used in the construction of the motorcycle, as listed on the application, was a part from a motorcycle previously reported to the Department as having been stolen.[6] The Department referred the matter to Colorado State Patrol Officer Lloyd Stewart who, after further investigation, obtained a search warrant for the motorcycle.

On June 19, 1981, Stewart executed the warrant and seized an engine later identified as the engine from the allegedly stolen motorcycle. Stewart also seized a motorcycle frame that generally matched the description of the frame of the allegedly sto-

5. Testimony at trial described the procedure whereby a builder of a motorcycle from parts can obtain a certificate of title from the Department pursuant to § 42–6–113. The owner must submit an affidavit listing all parts with identification numbers, if any, to the Department. The part numbers are checked with the National Crime Information Center to determine whether any parts are from motorcycles reported stolen. Upon a determination that none of the parts used in the motorcycle are stolen, the Department issues a new certificate of title.

6. Testimony of Harley Davidson motorcycle officials indicated that the company has a comprehensive cross-referencing system by which the company can determine from a part identification number the serial number of the motorcycle to which the part originally belonged. This enables law enforcement officials to determine whether a motorcycle part had been part of a stolen motorcycle.

len motorcycle; however, the identification number on the frame had been obliterated, making positive identification impossible. As a result of these events, an information was filed in December 1981, charging the defendant with one count of unlawful possession of an altered motor vehicle part.

Case number 82CR449, initially containing three counts of felony theft by receiving [7] and four counts of unlawful possession of altered motor vehicle parts,[8] was filed on December 18, 1982. This case arose as a result of a search of the defendant's property on January 14, 1982, which search was conducted pursuant to a warrant obtained by officers who initially sought to execute a court order issued the previous day in a civil nuisance action filed by the People against the defendant.[9] In the course of inventorying the defendant's property, two agents of the Lakewood police department observed various motorcycle parts with what appeared to be altered or obliterated identification numbers. The agents left the premises, obtained a search warrant, returned, executed the search warrant and seized the motorcycle parts.

The defendant filed several motions to suppress evidence in cases 82CR158 and 82CR449, which motions were denied by the trial court. The defendant also filed three motions to dismiss case 82CR158, which motions asserted that section 42–5–102(2) was unconstitutional on grounds of vagueness, overbreadth, improper delegation of power and denial of equal protection of the law. The trial court denied these motions. On December 20, 1983, the jury in these consolidated proceedings returned a verdict finding the defendant guilty of the single count of unlawful possession of altered automobile parts charged in 82CR158, not guilty of the theft by receiv-

ing count in 82CR449, not guilty of one count of unlawful possession of altered motor vehicle parts in 82CR449, and guilty of six counts of unlawful possession of motor vehicle parts in 82CR449.

The defendant asserts that the June 1981 search in 82CR158 and the January 1982 search in 82CR449 violated his constitutional rights; that section 42–5–102(2) is unconstitutionally vague and overbroad and violates his constitutional guarantee of equal protection of the law; that the trial courts committed numerous errors in rulings on motions filed by the defendant with respect to suppression of evidence, disqualification of a potential juror, recusal of a trial judge, entrapment, a mistake of law defense; and that the evidence was insufficient to support his convictions. We reject these arguments.

### III

Because both appeals challenge the constitutionality of section 42–5–102(2), albeit on different grounds, we will address the constitutional issues first. The guidelines for constitutional review of a statute are well-settled. Statutes are presumed to be constitutional, and a defendant challenging the constitutionality of a statute bears a heavy burden of proving the statute unconstitutional beyond a reasonable doubt. *People v. Edmonds*, 195 Colo. 358, 578 P.2d 655 (1978); *People v. Albo*, 195 Colo. 102, 575 P.2d 427 (1978).

### A

In 83SA400, the defendant asserts that section 42–5–102(2) is unconstitutionally vague, despite our decision to the contrary in *People v. Sequin*, 199 Colo. 381,

7. Section 18–4–410(6), 8 C.R.S. (1978).

8. On May 5, 1982, the court granted the district attorney's motion to add three additional counts of possession of altered motor vehicle parts to the information. Two of the theft by receiving counts were dismissed at the People's request prior to trial.

9. The pleadings in the civil nuisance lawsuit are not part of the record on appeal. From the record on appeal it appears that Jefferson County filed a public nuisance lawsuit against the defendant on January 13, 1982. Pursuant thereto Judge Joseph P. Lewis issued a temporary restraining order, accompanied by an order to inventory all of the property located on the premises leased by the defendant.

609 P.2d 622 (1980).[10] The defendant raises the identical issue addressed in *Sequin*— that section 42–5–102(2) is unconstitutionally vague because it proscribes conduct which is allowed under section 42–6–117. In *Sequin* we held that section 42–5–102(2) prohibits possession of an automobile part whose identification number has been intentionally altered,[11] whereas section 42–6–117 permits possession of automobile parts whose numbers have been accidentally altered. We adhere to our decision in *Sequin*, which is dispositive of this issue. *See People v. Rautenkranz*, 641 P.2d 317 (Colo.App.1982).

## B

In 84SA69, the defendant contends that section 42–5–102(2) imposes a higher penalty for the same conduct proscribed by section 18–5–305, 8 C.R.S. (1978), and, therefore, violates his right to equal protection of the law established by the fourteenth amendment to the United States Constitution.[12] Different statutes proscribing the same criminal conduct with disparate criminal sanctions violate equal protection principles. *E.g., People v. Marcy*, 628 P.2d 69 (Colo.1981) (and cases cited therein). However, the two statutes here at issue proscribe different, albeit related, criminal conduct. *See People ex rel. Russel v. District Court*, 185 Colo. 78, 521 P.2d 1254 (1974) (second degree murder and first degree extreme indifference murder proscribe different conduct when second degree murder is a specific intent crime and extreme indifference murder is a general intent crime). Section 18–5–305 prohibits the obscuring of an identification number of any article with intent to hinder or prevent identification of the article, and classifies such offense as a class 3 misdemeanor. Section 42–5–102(2) prohibits the alteration

of identification numbers on automobile parts and classifies such offense as a class 4 felony. The elements of the crime proscribed by section 18–5–305 are obscuring the identification number of an article, or selling or offering for sale in the course of business an article with knowledge that the identification number is obscured, with the intent to hinder or prevent identification of the article. Although section 18–5–305(4) provides that possession of an article with an obscured identification number is prima facie evidence of the intent to hinder identification and of knowledge of the obscured identification number, possession is not an element of the misdemeanor defined by this statute. Furthermore, section 18–5–305 requires proof of an intent to hinder or prevent identification of an item.

Section 42–5–102(2) requires proof only of knowing conduct. It also requires proof of possession of an altered motor vehicle part. The offense proscribed by section 42–5–102(2), therefore, contains an element not found in section 18–5–305. The combination of conduct and culpable mental state prohibited by section 42–5–102(2) is significantly different from the combination of conduct and culpable mental state prohibited by section 18–5–305. The fact that particular conduct may violate both statutes is no basis for the conclusion that one of them violates equal protection guarantees. *People v. Taggart*, 621 P.2d 1375 (Colo.1981); *see People v. Westrum*, 624 P.2d 1302 (Colo.1981); *People v. Czajkowski*, 193 Colo. 352, 568 P.2d 23 (1977). Section 42–5–102(2) does not deny the defendant equal protection of the law.

## C

The defendant challenges the constitutionality of section 42–5–102(2) on the

---

**10.** The defendant did not raise this issue in his motion for new trial. Pursuant to Crim.P. 33(a) then in effect, the issue was not preserved for appeal and may be considered only on the basis of plain error. *People v. Peterson*, 656 P.2d 1301 (Colo.1983); Crim.P. 52(b). Although the defendant did raise this issue in a Crim.P. 35 motion, the trial court was without jurisdiction to rule on the motion. *See supra* note 4.

**11.** *See supra* note 1.

**12.** The defendant did not raise this issue in his motion for new trial. Pursuant to Crim.P. 33(a) then in effect, that issue is not preserved for appeal and may be considered only on the basis of plain error. *See People v. Peterson*, 656 P.2d 1301 (Colo.1983); Crim.P. 52(b).

ground that it impermissibly allocates the determination of criminality to the discretion of manufacturers of motor vehicle parts or, in the alternative, to the discretion of the Department.[13] The defendant first argues that section 42–5–101(10), 17 C.R.S. (1984), defining "vehicle identification number," must be read together with section 42–6–107(1)(a), 17 C.R.S. (1984), which provides what information is to be contained in the certificate of title. He then argues that this statutory scheme established the principle that any motor vehicle identification number, the alteration of which may constitute criminal conduct, must appear on the certificate of title to the motor vehicle as well as on the part itself. The defendant next asserts that because some motor vehicle titles issued by the Department may list parts with altered, as opposed to original, numbers, the statute improperly delegates authority to the manufacturer or to the Department to determine whether possession of a particular part constitutes criminal conduct.

Section 42–5–101(10) states as follows:
"Vehicle identification number" means any identifying number, serial number, engine number, or other distinguishing number or mark, including letters, if any, placed on a vehicle or engine by its manufacturer or by authority of the department of revenue pursuant to section 42–6–117 or in accordance with the laws of another state or country.

Section 42–6–117, 17 C.R.S. (1984), states as follows:
The department is authorized to assign a distinguishing number to any motor vehicle whenever there is no identifying number thereon or such number has been destroyed, obliterated, or mutilated. Such distinguishing number shall be affixed to the vehicle in a manner and position to be determined by the department. Such motor vehicle shall be registered and titled under such distinguishing number in lieu of the former number or absence thereof.

By these two statutes the General Assembly has provided a mechanism for legitimately altering numbers of motor vehicle parts; consequently, a particular certificate of title may list a part number that differs from the original manufacturer's part number.

■ The defendant also suggests that an absence of agency rules or regulations governing the issuance of titles to vehicles with altered parts constitutes an unconstitutional delegation of power. *See Elizondo v. State Department of Revenue*, 194 Colo. 113, 570 P.2d 518 (1977). Section 42–5–102(2), the statute defining the offenses committed by the defendant, is unrelated to the procedure for issuance of titles to vehicles. Determining whether the statutory provisions relating to the issuance of titles to motor vehicles, §§ 42–6–101 to –118, 17 C.R.S. (1984), are constitutional will not aid in the disposition of the defendant's appeal. This court will not address a constitutional question not essential to the resolution of the case before it. *Harvey v. Jefferson County School District*, 710 P.2d 1103 (Colo.1985); *Board of County Commissioners v. City & County of Denver*, 194 Colo. 252, 571 P.2d 1094 (1977).

The defendant finally argues that application of section 42–5–102(2) to his conduct denied him due process of law because that statute is inconsistent with the provisions of section 42–6–107(1)(a).[14] This argument is based on the defendant's assertion that in *Sequin*, 199 Colo. 381, 609 P.2d 622, we held that the Certificate of Title Act, §§ 42–6–101 to –208, 17 C.R.S. (1984) (the Act), and the Automobile Theft Law, §§ 42–5–101 to –109, were to be construed *in pari materia.* The defendant then argues as follows: section 42–6–107(1)(a) requires every certificate of title to a motor vehicle to include "a description of such ... marks or symbols as may be placed upon the vehicle by the manufacturer thereof for identification purposes"; the original manufacturer's identification numbers that al-

---

**13.** *See supra* note 10.

**14.** *See supra* note 10.

legedly were altered do not appear in the relevant certificates of title; section 42–5–102(2) applies only to identification numbers appearing in the certificates of title; section 42–5–102(2) is, therefore, unconstitutional as applied to the defendant because he did not alter the identification numbers listed in the relevant certificates of title.

█ We have previously noted that certificates of title may contain legitimately altered identification numbers. Furthermore, the premise upon which the defendant's argument rests is erroneous. We did not hold in *Sequin* that all of the provisions of article 6 and article 5 of Title 42 must be construed *in pari materia.* We simply recognized that because the General Assembly simultaneously deleted former section 42–6–116 of the Act and adopted section 42–5–102(2), "these legislative changes and additions are *in pari materia* and must be construed together and reconciled if possible." *Sequin,* 199 Colo. at 387, 609 P.2d at 626. Finally, there is no inconsistency between sections 42–5–102(2) and 42–6–107(1)(a). Section 42–6–107(1)(a) merely provides what information is to be contained in the certificate of title, including a description of any motor vehicle identification number placed upon the item by the manufacturer. Section 42–5–102(2) makes it a felony to alter "the vehicle identification number, manufacturer's number, or engine number of an automobile or automobile part...." The plain language of section 42–5–102(2) evidences a legislative intent to punish the alteration of *all* numbers used for identification purposes on motor vehicle parts, not just the particular vehicle identification number which happens to appear in a particular certificate of title. *See People v. Trujillo,* 631 P.2d 146 (Colo. 1981). The defendant's argument that section 42–5–102(2) applies only to numbers listed in certificates of title, although imaginative, is unpersuasive.

## IV

In 84SA69, the appeal of the consolidated trials, the defendant challenges the trial court rulings denying two motions to suppress evidence and dismissing a juror. He also asserts numerous errors by the trial court in connection with his mistake of law defense.

## A

Prior to trial, the defendant filed a motion to suppress the fruits of the June 1981 search.[15] The defendant asserts two grounds in support of his argument that the trial court erred in denying the motion: that the form he filled out to obtain a certificate of title for his homemade motorcycle failed to warn him that the information he provided could be used against him in criminal proceedings, and that the computer information which reported that a part on the defendant's homemade motorcycle belonged to a stolen motorcycle was not sufficiently reliable to constitute probable cause.[16]

█ The warnings required by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), need only be given by police officials in situations constituting custodial interrogation. *People v. Thiret,* 685 P.2d 193 (Colo.1984); *People v. Johnson,* 671 P.2d 958 (Colo.1983). At the time he filled out the application form, the defendant was neither in custody nor the subject of interrogation. The fact that the identification numbers in title certificate applications are verified by the Department does not alter the non-custodial nature of the circumstances surrounding the defendant's election to apply for a certificate of title to his motorcycle. *See People v. Pierson,* 670 P.2d 770 (Colo.1983).

█ An affidavit supporting a search warrant must allege sufficient facts to

---

**15.** The defendant's briefs on appeal refer to a July 1981 search. As far as can be ascertained from the record, no search occurred in July 1981. The only search which occurred close to that time was the June 19, 1981, search.

**16.** *See supra* note 12.

warrant a person of reasonable caution to believe that contraband or evidence of criminal activity is located on the premises to be searched. *People v. Hearty*, 644 P.2d 302 (Colo.1982); *People v. Ball*, 639 P.2d 1078 (Colo.1982). The affidavit for the June 19, 1981, search stated that the engine used in the defendant's motorcycle was listed as stolen in the computer used by the Department and that this information had been verified in the Colorado State Patrol Computer and with the National Automobile Theft Bureau. These facts amply support a reasonable belief that the engine and frame used in the defendant's motorcycle were parts from a stolen motorcycle.

### B

The defendant argues that all evidence seized as the result of the January 14, 1982, search should have been suppressed because the initial inventory conducted by the police prior thereto was improper. Specifically, the defendant asserts that the court order authorizing such inventory was invalid.[17] We disagree.

On January 13, 1982, a civil suit was initiated by the Jefferson County District Attorney for abatement of a public nuisance, pursuant to the Abatement of Public Nuisance Act, §§ 16–13–301 to –316, 8 C.R.S. (1978 & 1985 Supp.). The trial judge in that case issued a temporary restraining order prohibiting the defendant from removing certain property from his residence and directing police officers to conduct an inventory of:

> all furniture, furnishings, appliances, inventory, merchandise, automotive and motorcycle parts, automobiles and motorcycles, tools and miscellaneous personal property located on [the defendant's] property.

Numerous police officers entered the defendant's property the next day to serve the order and conduct the inventory. Upon observing several engine parts with apparently altered numbers in plain view, two agents left the defendant's premises and

obtained a warrant for a search thereof. They returned with a warrant and, pursuant thereto, seized various motorcycle parts.

The defendant relies upon our decision in *People v. Stoppel*, 637 P.2d 384 (Colo.1981), to support his argument that the evidence seized on January 14 should have been suppressed. In *Stoppel*, we considered whether an arguably valid but warrantless intrusion leading to the inadvertent discovery of incriminating evidence was in reality a pretext to avoid constitutional protections against general warrants and the requirement that searches may be conducted only on the basis of warrants supported by probable cause. We concluded that the plain view exception to the requirement that property may be seized only on the basis of a previously obtained warrant requires that three conditions must exist: (1) a prior valid intrusion; (2) an inadvertent discovery of the evidence; and (3) a reasonable belief by the officer that the item is incriminating. The defendant argues that the police officers' initial entry onto his property did not constitute a valid intrusion and, therefore, that the seizure of the altered parts was unjustified.

The January 14 seizure of the altered parts resulted from the execution of a search warrant obtained prior thereto. The defendant does not challenge the validity of that warrant. He does assert that the officers' conduct prior to obtaining the warrant was equivalent to a search without probable cause and that, therefore, the temporary restraining order and its inventory requirement amounts to a general warrant.

■ The record indicates that at the time they first observed the altered parts, the officers had not commenced any inventory. They saw many of the items later seized immediately upon opening the doors to certain buildings and entering those buildings. The temporary restraining order issued by the trial court was expressly authorized by section 16–13–308, 8 C.R.S. (1978 & 1985

17. *Id.*

Supp.). The order contains an express finding that all items located on the defendant's property were used in conducting a public nuisance. The defendant does not challenge this finding, and he does not contend that this order is unauthorized by the Abatement of Public Nuisance Act. Rather, he argues that the officer's conduct was equivalent to a search on a "tainted pretext" and that the inventory procedure was in fact a "writ of assistance." The record supports the conclusion that the officers were acting within their authority and were legitimately on the defendant's premises at the time they first observed the altered parts.

▪ The defendant also argues that the evidence obtained on January 14 should have been suppressed because the police failed to follow the procedures set forth in section 42–5–107, 17 C.R.S. (1984), and because the trial judge did not conduct an evidentiary hearing to determine the ownership of the altered parts pursuant to section 42–5–107(3).[18] Section 42–5–107 establishes a procedure for determining whether an altered automobile part may be declared forfeited. Forfeiture proceedings need not be instituted merely because evidence of a violation of section 42–5–102 is discovered. The trial court did not err in denying the defendant's suppression motion.

### C

▪ During voir dire, a potential juror disclosed in response to questioning that a former boyfriend had been prosecuted by the Jefferson County district attorney's office for the theft of her mother's car. The prosecution moved to dismiss the potential juror for cause, which motion was denied by the trial court. However, after the jury had been selected, the prosecutor renewed the motion to disqualify the juror, and further proceedings were conducted out of the presence of the other jurors. The juror then admitted that she traveled to Florida to join her boyfriend knowing that he had escaped from the work release program to which he had been sentenced. The trial

court then granted the prosecution's renewed motion to excuse the juror for cause, finding that the juror's conduct in aiding her boyfriend's escape to Florida indicated a bias on her part. In these circumstances, we find no abuse of discretion in the trial court's decision to dismiss this juror for cause. *See People v. Corley*, 698 P.2d 1336 (Colo.1985); *People v. Donnelly*, 691 P.2d 747 (Colo.1984).

The defendant asserts that the procedure used to select the jury in 84SA69 was invalid. Case 82CR449 was assigned to Judge Hardesty. However, Judge Perricone conducted the jury selection in that case. Prior to the commencement of voir dire, the defendant filed a motion for recusal of Judge Hardesty, pursuant to Crim.P. 21(b). Judge Perricone agreed with the defendant that Judge Hardesty should rule on the motion, but decided to proceed with the selection of the jury and delay swearing in the ultimate jurors until the motion was determined. Judge Hardesty later granted the defendant's motion, and Judge Perricone was appointed to preside over the case.

▪ Upon the filing of a motion for recusal, Crim.P. 21(b)(3) provides that "all other proceedings in the case shall be suspended until a ruling is made thereon." The rule is designed to ensure that a judge who is the subject of recusal proceedings will not exercise any authority over any aspect of the case so long as that judge's neutrality is questioned. Judge Perricone's continuation of jury selection did not contravene this purpose, and his participation in the jury selection process did not result in any prejudice to the defendant. Under these circumstances, no fundamental right of the defendant was affected.

### D

The defendant asserts that the decision of Lakewood police officers to file the civil nuisance action, coupled with the officers' refusal to accede to the defendant's re-

18. *See supra* note 12.

quest that they visit his house "to check out some parts that belonged to other people," constituted entrapment as a matter of law. Entrapment may be established as a defense to alleged criminal conduct when official conduct "instigates the offense, the commission of which was nonexistent in the mind of the intended victim of the 'entrapment.'" *Gonzales v. People*, 168 Colo. 545, 549, 452 P.2d 46, 48 (1969) (quoting *Reigan v. People*, 120 Colo. 472, 477, 210 P.2d 991, 993 (1949)); *see Bailey v. People*, 630 P.2d 1062 (Colo.1981); § 18-1-709, 8 C.R.S. (1978). Under no view of the facts disclosed by the record does the conduct of the officers approach the concept of "entrapment." The defendant's argument on this issue is frivolous.

### E

The defendant argues that his due process rights were violated in 84SA69 by several rulings of the trial court with regard to his tendered affirmative defense of mistake of law. We reject these arguments.

Section 18-1-504(2), 8 C.R.S. (1978), provides:

A person is not relieved of criminal liability for conduct because he engages in that conduct under a mistaken belief that it does not, as a matter of law, constitute an offense, unless the conduct is permitted by one or more of the following:

(a) A statute or ordinance binding in this state;

(b) An administrative regulation, order, or grant of permission by a body or official authorized and empowered to make such order or grant the permission under the laws of the state of Colorado;

(c) An official written interpretation of the statute or law relating to the offense, made or issued by a public servant, agency, or body legally charged or empowered with the responsibility of adminis-

tering, enforcing, or interpreting a statute, ordinance, regulation, order, or law. If such interpretation is by judicial decision, it must be binding in the state of Colorado.

A sincere but mistaken belief as to whether particular conduct constitutes an offense is not a defense to prosecution for such conduct under this statute unless the conduct is in fact permitted by statute, administrative regulation or judicial decision.

At trial, the defendant informed the People and the trial court that he believed any conduct of his that might constitute knowing possession of altered motor vehicle parts was conduct authorized by the provisions of sections 42-5-107, 42-6-107, and 42-6-117.[19]

 As we observed in section IV(B) of this opinion, section 42-5-107 establishes a procedure for the initiation of forfeiture proceedings. In the event such proceedings are instituted, any person claiming ownership of any such part may present evidence of such ownership at a judicial hearing to establish the right to the return of the part. The defendant argues that because one who possesses an altered motor vehicle part may assert ownership of that part in a forfeiture proceeding, the prior possession must be deemed "authorized by statute" pursuant to section 18-1-504(2)(a).

The defendant misconstrues section 42-5-107. While this statute authorizes the return of altered parts to the owner thereof, it does not excuse the owner from criminal prosecution for conduct punishable under the provisions of section 42-5-102(2). Ownership and lawful possession of an altered motor vehicle part are the only acts authorized by section 42-5-107. For example, an owner of an altered motor vehicle part may be a good faith purchaser of the part, as expressly recognized by section 42-5-107(5)(a)(I), in which event the owner would not have the requisite culpable men-

---

**19.** In his oral argument to the trial court, the defendant argued that his possession of the altered parts was permitted by regulations of the Department and a prior decision by another trial court in a related case, as well as the three statutes. The defendant does not raise this particular issue on appeal.

tal state for a conviction of knowing possession of an altered part. The statute does not, expressly or by implication, authorize conduct defined as a criminal offense by section 42–5–102(2).

The defendant also argues that pursuant to our decision in *Sequin,* 199 Colo. 381, 609 P.2d 622, when section 42–5–102(2) is construed *in pari materia* with sections 42–6–107 and 42–6–117, the only conduct upon which criminal prosecution may be based is conduct dealing with serial or part numbers which appear in a certificate of title to a vehicle. This argument is basically the same argument the defendant urged in support of his challenge to the constitutionality of section 42–5–102(2)—an argument we rejected in section II(A) of this opinion. None of the statutes upon which the defendant relies permits one to possess automobile parts with intentionally altered identification numbers.

■■■■ For similar reasons, we reject the defendant's argument that the trial court erroneously refused certain jury instructions tendered by the defendant on mistake of law.[20] Although a defendant is entitled to an instruction on his theory of the case, *e.g., People v. Dillon,* 655 P.2d 841 (Colo.1983), an instruction may not be given if it embodies an incorrect or misleading statement of the law. *See Houser v.*

*Eckhardt,* 168 Colo. 226, 450 P.2d 664 (1969); *Millenson v. Department of Highways,* 41 Colo.App. 460, 590 P.2d 979 (1978). Section 18–1–504(2) expressly requires that a statute, regulation or judicial decision permit the defendant's conduct. The statutes upon which the defendant relied did not permit one to knowingly possess an intentionally altered automobile part. The defendant, therefore, was not entitled to rely on mistake of law as a defense, and the trial court did not err in rejecting the three instructions in question.

■■■ The defendant finally argues in 84SA69 that there was insufficient evidence to support his convictions therein. Upon viewing the evidence as a whole and in the light most favorable to the prosecution, *People v. Quick,* 713 P.2d 1282 (Colo. 1986), we conclude that the evidence is ample to support a conclusion by reasonable jurors that the defendant violated section 42–5–102(2) beyond a reasonable doubt. *See People v. Aalbu,* 696 P.2d 796 (Colo.1985); *People v. Gonzales,* 666 P.2d 123 (Colo.1983).

## V

The defendant argues on appeal that he was denied effective assistance of counsel in case 83SA400.

20. Instruction No. 7 in case 82CR449 stated as follows:

[1] You are instructed that defendant John William Bossert has raised the defense of "mistake of law." Mr. Bossert contends that possession of a motorcycle part containing an altered number is legal.

[2] You are further instructed that on or about the date of the offense alleged in the complaint against the defendant, the following law was in effect in the State of Colorado:

[3] 42–6–117. Distinguishing number affixed to vehicle, when. The department is authorized to assign a distinguishing number to any motor vehicle whenever there is no identifying number thereon or such number has been destroyed, obliterated, or mutilated. Such distinguishing number shall be affixed to the vehicle in a manner and position to be determined by the department. Such motor vehicle shall be registered and titled under such distinguishing number in lieu of the former number or absence thereof.

[4] You are further instructed that 42–6–117 applies to non-intentional obliterations or mutilations.

[5] If you find that the prosecution proved each and every element of the crime of Possession of Altered Auto Parts, but you find that he possessed such parts in a mistaken belief that his conduct was authorized by the above-quoted statute or if you find that there is a reasonable doubt as to this issue you must find the defendant not guilty of Possession of Altered Auto Parts.

The defendant objected to the insertion of paragraph 4 of the instruction. Paragraph 5 of the instruction is an erroneous statement of the law; § 18–1–504(2) permits no defense for a mistaken belief that conduct is legal. However, because such error could only inure to the benefit of the defendant, the error in paragraph 5 of the instruction is harmless. *See People v. Mattas,* 645 P.2d 254, 257 n. 3 (Colo.1982).

In his supplementary motion for new trial, the defendant did raise the issue of ineffective assistance of counsel, although on different grounds from those asserted in his brief on appeal. To preserve an issue for appeal, one must frame the issue in specific rather than general terms. Crim.P. 33(a); *see Losavio v. District Court*, 182 Colo. 186, 512 P.2d 264 (1973). Although it is debatable whether the defendant's general claim of ineffective assistance of counsel is sufficient to preserve the issues here presented, we nevertheless will address them.

Four grounds for ineffective assistance of counsel are alleged on appeal: failure to object to irrelevant, prejudicial testimony; failure to present evidence of or request instructions on the defense of mistake of law; failure to object to a jury instruction which did not include a necessary element; and failure to argue that section 42–5–102(2) violates the defendant's constitutional right to equal protection of the law because it classified as a felony conduct classified as a misdemeanor by section 18–5–305.

 The threshold standard in ruling on a claim of ineffective assistance of counsel is whether the defendant received reasonably effective assistance of an attorney. *People v. Norman*, 703 P.2d 1261 (Colo. 1985); *People v. Moody*, 676 P.2d 691 (Colo. 1984); *People v. Velasquez*, 641 P.2d 943 (Colo.), *cert. denied*, 459 U.S. 805, 103 S.Ct. 28, 74 L.Ed.2d 43 (1982). Mere disagreement as to trial strategy does not support a claim of ineffective assistance of counsel. *E.g., People v. Moody*, 630 P.2d 74 (Colo. 1981); *People v. Shook*, 186 Colo. 339, 527 P.2d 815 (1974); *People v. Moreno*, 181 Colo. 106, 507 P.2d 857 (1973); *Maynes v. People*, 178 Colo. 88, 495 P.2d 551 (1972). The public defender's decision not to object to what the defendant characterizes as prejudicial and irrelevant evidence falls within the realm of trial strategy.

Effective assistance of counsel, as guaranteed by the sixth amendment, does not require an attorney to object to every possible error. *See United States v. Crouthers*, 669 F.2d 635 (10th Cir.1982). An attorney's trial strategy may encompass careful selection of critical errors for objection. We find no error in the strategy of the defendant's trial counsel in 83SA400.

 The defendant's claim that he was denied effective assistance of counsel because his trial attorney failed to present evidence of, or request instructions on, the defense of mistake of law is without merit. As discussed in section IV(E) of this opinion, the defendant had no mistake of law defense.

We have also concluded in section III(B) of this opinion that section 42–5–102(2) and section 18–5–305 punish different, not identical, conduct. The defendant's trial attorney cannot be deemed ineffective because he failed to present an erroneous legal proposition to the trial court.

The defendant also argues that his trial attorney erred in not arguing the applicability of section 42–5–106, 17 C.R.S. (1984). Section 42–5–106 creates a class 1 petty offense for any dealer who examines the vehicle identification numbers of automobiles "bought, taken in trade, repaired, or stored by it" and fails to report any irregularities to police officials. While the defendant may have violated section 42–5–106, as well as section 42–5–102(2), the decision of charging is left to the discretion of the prosecutor. *See Sandoval v. Farish*, 675 P.2d 300 (Colo.1984). Had the defendant's attorney raised the applicability of section 42–5–106, he risked the subsequent charging of the defendant with a violation of that section as well as with a violation of section 42–5–102(2). The decision of the defendant's attorney not to raise the applicability of section 42–5–106 was one of strategy and not subject to scrutiny under an ineffective assistance of counsel standard. *See People v. Moody*, 630 P.2d 74; *People v. Wimer*, 681 P.2d 967 (Colo.App.1984).

Finally, the defendant argues that his trial counsel's failure to object to the instruction setting forth the elements of the crime denied him the effective assistance of

counsel. Instruction No. 5 in case 82CR157 read in pertinent part:

A person commits the crime charged in the information if:

He knowingly possesses an automobile part containing an obliterated vehicle identification number.

The elements of the offense charged are therefore:

(1) Knowingly

(2) Possesses an automobile part containing an obliterated vehicle identification number.

This instruction is erroneous, the defendant argues, because it does not make clear that the person must know that the automobile part contains an obliterated identification number. However, the *mens rea* term "knowingly," offset as it is from the conduct element, modifies all conduct described in element (2). There is no error in this jury instruction, and the defendant's trial counsel had no basis to object to it.

## VI

On January 31, 1985, this court granted a motion by the defendant for limited remand to the trial court to permit the defendant to file a Crim.P. 35 motion with the trial court for dismissal of case 82CR449 because the prosecution failed to join that case for trial with 82CR157, allegedly in violation of Crim.P. 8(a) and section 18-1-408(2), 8 C.R.S. (1978).[21] The defendant had not, prior to this appeal, requested joinder of cases 82CR449 and 82CR157. Nevertheless, the trial court concluded that because we had ordered the limited remand it was precluded from finding that the defendant had waived any right to joinder he might have under section 18-1-408(2) and Crim.P. 8(a). Concluding that the prosecution had violated the statute and the rule, the trial court declined to dismiss case 82CR449, but ordered the defendant's sentences in case 82CR157 and case 82CR449 to run concurrently.

The defendant asserts that the trial court erred in failing to dismiss the convictions in 82CR449. The People argue that the trial court erred in concluding that the defendant had not waived his right to compulsory joinder.

Section 18-1-408(2) provides:

If several offenses are known to the district attorney at the time of commencing the prosecution and were committed within his judicial district, all such offenses upon which the district attorney elects to proceed must be prosecuted by separate counts in a single prosecution if they are based on the same act or series of acts arising from the same criminal episode. Any such offense not thus joined by separate count cannot thereafter be the basis of a subsequent prosecution.

■ Although the constitutional proscriptions against double jeopardy form the basis of the compulsory joinder rule, *People v. District Court*, 183 Colo. 101, 515 P.2d 101 (1973), the rule is broader than the constitutional limitation, *Corr v. District Court*, 661 P.2d 668 (Colo.1983). Compulsory joinder is designed to "protect the accused against the oppressive effect of sequential prosecutions ... and to conserve judicial and legal resources that otherwise would be wasted...." *Jeffrey v. District Court*, 626 P.2d 631, 637 (Colo.1981).

In cases where a defendant has asserted his rights under section 18-1-408(2) prior to the beginning of the second trial, we have held that the proper remedy is dismissal of the subsequent charges. *Corr*, 661 P.2d 668; *Jeffrey*, 626 P.2d 631. This result furthers the goals of compulsory joinder by protecting the accused from an oppressive second trial and preserving judicial and legal resources. However, where, as here, the defendant does not raise the issue of joinder until well after the conclusion of the second trial, neither of the public policy reasons for the compulsory joinder rule would be served—the harm, if any, has occurred.

Moreover, section 18-1-408(4), recognizes that there are instances in which a defendant may request severance of properly joined charges. That section provides:

---

**21.** Section 18-1-408(2), 8 C.R.S. (1978), is identical to Crim.P. 8(a).

When a defendant is charged with two or more offenses based on the same act or series of acts arising from the same criminal episode, the court, on application of either the defendant or the district attorney, may order any such charge to be tried separately, if it is satisfied that justice so requires.

A defendant may, for instance, determine that the prejudicial effect of informing the jury of multiple charges against him outweighs the convenience of defending in a single trial.

As a result of the prosecution's decision to file separate cases, the defendant here had the benefit of severance. He may have determined that it was strategically preferable to keep the single charge in 82CR157 (83SA400) separate rather than risk the consequences of jury knowledge of the other eleven counts in 82CR449 (84SA69). We can only speculate as to why the defendant did not raise the compulsory joinder issue at trial. His reasons are irrelevant. Certainly section 18–1–408(2) imposed no jurisdictional bar to the defendant's conviction in 82CR449, the second trial.[22]

■ Accordingly, we hold that where, as here, a defendant fails to raise the issue of compulsory joinder prior to the time at which jeopardy attaches in the second prosecution, such claim is waived.[23] Because the defendant waived his compulsory joinder claim, the limited remand court erred in ruling on the merits of the claim. We, therefore, disapprove the limited remand court's ruling that the compulsory joinder statute required amendment of the mittimus to provide for concurrent sentencing in the two cases.

**22.** Moreover, we note, based on the facts in the record before us, the unlikelihood that the acts in the two cases arose out of the same criminal episode. The defendant's conviction in 82CR157 resulted from his sale of a motorcycle with an obliterated part number to a third party and the third party's subsequent reporting of the matter to the Lakewood police. The defendant's convictions in 82CR449 arose from evidence obtained from searches conducted by the Lakewood police; the search in 82CR158 resulted from the defendant's application for a motorcycle title, and the search in 82CR449 resulted

The judgments of conviction in both cases are affirmed, and the trial court's order imposing concurrent sentences is disapproved.

from a public nuisance action filed against the defendant's premises.

**23.** American Bar Association Standards for Criminal Justice (2d ed.), Standard 13–2.3(c) recommends just such a time limit:

A defendant who has been tried for one offense may thereafter move to dismiss any additional offense based upon the same conduct or the same criminal episode.... The motion to dismiss must be made prior to the second trial....