23CA1081 Peo v Dyer 02-20-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1081
Larimer County District Court No. 14CR1119
Honorable Gregory M. Lammons, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Douglas James Dyer,

Defendant-Appellant.

---

ORDER AFFIRMED

Division V
Opinion by JUDGE SCHOCK
Freyre and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 20, 2025

---

Philip J. Weiser, Attorney General, Frank R. Lawson, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Alan Lijewski, Alternate Defense Counsel, Salida, Colorado, for Defendant-Appellant

¶ 1    Defendant, Douglas James Dyer, appeals the order denying his Crim. P. 35(c) motion without a hearing.  We affirm.

## I.    Background

¶ 2    In 2009, Dyer's almost three-year-old daughter (the victim) was diagnosed with a seizure disorder and was prescribed an anti-seizure medication.  At that time, the victim could walk and talk normally and control the movements of her arms and legs.

¶ 3    Dyer and his wife did not take the victim to the specialist to whom she was referred and, at some point, stopped giving her the anti-seizure medication.  Over the next four years, the victim's health deteriorated and she lost the ability to walk, talk, feed herself, or use the bathroom on her own.  Despite this deterioration of the victim's condition, her parents never took her to the doctor.

¶ 4    In October 2013, the Larimer County Department of Human Services received a report that Dyer and his wife were not providing medical care to the victim.  Officers and other public safety officials went to the home, where they saw the victim having a seizure and took her to the hospital.  At that time, the victim was nonverbal, nonambulatory, malnourished, and incontinent.  A comparison of MRIs from 2009 and 2013 showed that her brain had atrophied.

1

¶ 5     After her discharge from the hospital, the victim was placed in foster care, where she received medical care, including treatment to control her seizures, and started to regain normal functioning.

¶ 6     Dyer and his wife were charged with child abuse resulting in serious bodily injury. The prosecution's theory was that the Dyers medically neglected the victim, causing her to sustain serious bodily injury. Dyer argued that his mental condition prevented him from forming the requisite knowing or reckless mental state.

¶ 7     Dyer was found guilty and sentenced to fifteen years in prison. A division of this court affirmed the judgment. *See People v. Dyer*, (Colo. App. No. 17CA0541, Mar. 12, 2020) (not published pursuant to C.A.R. 35(e)). The district court later granted Dyer's Crim. P. 35(b) motion and reduced his sentence to ten years in prison.

¶ 8     Dyer then filed a pro se Crim. P. 35(c) motion for postconviction relief, arguing, as relevant here, that defense counsel provided ineffective assistance by placing his mental condition at issue and by failing to call Dr. Gerald McIntosh as a witness. Dyer's counsel filed a supplemental petition. In that supplement, Dyer argued that trial counsel was ineffective by endorsing an impaired mental condition defense without sufficient investigation

into its viability. He also argued that counsel was ineffective by not calling Dr. McIntosh as a witness because Dr. McIntosh would have testified about (1) the complexities of the victim's medical condition; (2) other possible causes of her condition, including "a new condition that likely started sometime in 2013"; and (3) the Dyers' concern for the victim and confusion about her medical needs.

¶ 9 The district court denied Dyer's motion without a hearing. It concluded that Dyer's allegations concerning the mental condition defense were insufficient to overcome the presumption of reasonableness afforded to counsel's strategic decision to pursue the defense. The court concluded that the decision not to call Dr. McIntosh as a witness was not unreasonable because the proffered testimony would have been cumulative and defense counsel thoroughly cross-examined the prosecution's expert witnesses concerning the cause of the victim's condition. The court also concluded that Dyer could not show prejudice on either claim.

## II.    Analysis

¶ 10 Dyer contends that the district court erred by denying his claim for ineffective assistance of counsel without holding an evidentiary hearing. He argues that his counsel was ineffective by

(1) pursuing a mental condition defense and (2) failing to call Dr. McIntosh as a witness at trial. He also asserts that the cumulative effect of these errors by counsel warrants relief. We disagree.

### A. Standard of Review and Applicable Law

¶ 11 We review de novo the district court's denial of a Crim. P. 35(c) motion without a hearing. *People v. Cali*, 2020 CO 20, ¶ 14.

¶ 12 To prevail on a claim for ineffective assistance of counsel, a defendant must show that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *Dunlap v. People*, 173 P.3d 1054, 1062 (Colo. 2007). To satisfy the first prong of this test, the defendant must show that counsel's representation "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). To satisfy the second prong of the test, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

¶ 13 Defense counsel is not simply "the alter-ego or mouthpiece of the accused, but is a trained advocate charged with representing an accused." *People v. Schultheis*, 638 P.2d 8, 12 (Colo. 1981). Thus, defense counsel has final authority to make decisions that are

strategic or tactical in nature and may make tactical decisions with which the client disagrees. *Arko v. People*, 183 P.3d 555, 558 (Colo. 2008). Such decisions include what evidence should be offered and what witnesses to call, *see id.*; *People v. Aguilar*, 2012 COA 181, ¶ 12, and what strategy should be employed in the defense of the case, *see Steward v. People*, 498 P.2d 933, 934 (Colo. 1972).

¶ 14 Our review of those decisions is "highly deferential." *Ardolino v. People*, 69 P.3d 73, 76 (Colo. 2003). We must "evaluate particular acts and omissions from counsel's perspective at the time, and indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

¶ 15 A defendant need not set forth evidentiary support for their allegations in a Crim. P. 35(c) motion, but instead need only assert facts that if true would provide a basis for relief. *White v. Denver Dist. Ct.*, 766 P.2d 632, 635 (Colo. 1988). A district court may deny a Crim. P. 35(c) motion without a hearing "only where the motion, files, and record in the case clearly establish that the allegations presented in the defendant's motion are without merit and do not warrant postconviction relief." *Ardolino*, 69 P.3d at 77; *see also* Crim. P. 35(c)(3)(IV). A court may therefore deny a claim of

ineffective assistance of counsel without a hearing "if, but only if, the existing record establishes that the defendant's allegations, even if proven true, would fail to establish either constitutionally deficient performance or prejudice."  *People v. Chavez-Torres*, 2016 COA 169M, ¶ 31, *aff'd*, 2019 CO 59.

## B.  Mental Condition Defense

¶ 16    Dyer first asserts that his counsel was ineffective by pursuing a mental condition defense that was not viable under the facts of the case.  But even accepting Dyer's allegations as true, we conclude that they were insufficient to demonstrate that his counsel's strategic decision to pursue such a defense was objectively unreasonable.  *See Ardolino*, 69 P.3d at 78 ("To establish ineffective assistance, the defendant was required to overcome the presumption that, under the circumstances, the challenged conduct of his counsel might be considered sound trial strategy.").

¶ 17    As an initial matter, Dyer's stated disagreement with his counsel's decision to pursue this defense cannot support his claim.  *See People v. Bossert*, 722 P.2d 998, 1010 (Colo. 1986) ("Mere disagreement as to trial strategy does not support a claim of

6

ineffective assistance of counsel."). Counsel can make strategic decisions with which their client disagrees. *Arko*, 183 P.3d at 558.

¶ 18 And viewed from counsel's perspective at the time, the record reflects a reasonable basis for counsel's pursuit of the defense. In particular, counsel presented testimony from experts who opined that Dyer had a schizotypal personality disorder and that this condition substantially impacted his ability to recognize the victim's medical issues and the risks of not getting her medical treatment. Dyer contends that his counsel's reliance on his mental condition resulted in the presentation of unfavorable testimony. But he does not explain why such evidence would not have been presented anyway, given that his mental state — and specifically, whether he acted knowingly or recklessly — was the central issue in dispute.

¶ 19 Moreover, although Dyer argued in his supplemental petition that his counsel failed to conduct an "independent, confidential investigation" into Dyer's mental condition before the arraignment, he did not address the nature of counsel's subsequent investigation and how it bore on the reasonableness of the decision to proceed with the defense. *Cf. People v. Zuniga*, 80 P.3d 965, 973 (Colo. App. 2003) (rejecting the defendant's claim that counsel was ineffective

for conducting an inadequate investigation because, among other things, he did not explain how the results of an additional investigation would have affected the outcome of the case).  Indeed, counsel's pretrial endorsements of defense witnesses reflect that counsel contacted multiple expert witnesses and secured opinions favorable to the defense.  *See Strickland*, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.").

¶ 20    On appeal, Dyer contends that his counsel's assertion of a mental condition defense operated as a concession of guilt that undermined his rights to plead not guilty and testify in his own defense.  But even broadly construing Dyer's allegations in his pro se motion, *see People v. Bergerud*, 223 P.3d 686, 696-97 (Colo. 2010), Dyer did not make this argument in his motion.  We therefore will not address it for the first time on appeal.  *See People v. Goldman*, 923 P.2d 374, 375 (Colo. App. 1996) ("Allegations not raised in a Crim. P. 35(c) motion . . . and thus not ruled on by the trial court are not properly before this court for review.").  In any event, Dyer's counsel did not concede guilt but consistently maintained that Dyer did not act with the requisite mens rea.

¶ 21    Thus, we conclude that the allegations in Dyer's pro se Crim. P. 35(c) motion and counsel's supplement to that motion, even if true, do not overcome the strong presumption that counsel's strategic decision regarding the theory of defense was reasonable. *See Strickland*, 466 U.S. at 690 ("[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.").

¶ 22    We also agree with the district court that Dyer's allegations do not establish a reasonable probability that, but for counsel's assertion of the mental condition defense, the result of the trial would have been different.  Dyer alleged in his supplement that he was prejudiced because the assertion of the defense resulted in hours of testimony regarding his mental condition that distracted from his primary defense that he did not form the mental states of knowingly or recklessly.  But he does not allege how this additional testimony prejudiced his defense — particularly when the jury was expressly instructed that it could consider such "mental health evidence" in determining whether the prosecution had proven the element of "knowingly" or "recklessly" beyond a reasonable doubt.

## C. Failure to Call Expert Witness

¶ 23　Dyer next contends that the district court erred by denying his claim that defense counsel was ineffective for failing to call Dr. McIntosh as a witness at trial.  He argues that Dr. McIntosh would have testified, contrary to other witnesses, that the victim's brain showed no signs of atrophy between 2009 and 2013, and that her condition was likely caused by a new condition that arose in 2013.

¶ 24　But again, even accepting Dyer's allegations as true, they do not overcome the strong presumption of reasonableness that attaches to counsel's strategic decisions about which witnesses to call.  *See Strickland*, 466 U.S. at 689-90; *Ardolino*, 69 P.3d at 78.

¶ 25　First, as to Dyer's assertion in his supplemental motion that McIntosh would have testified about the complexities of the victim's medical condition and Dyer's apparent confusion about the required treatment, there was ample testimony at trial concerning these issues.  Multiple witnesses testified regarding the complexity of the victim's medical condition and the various tests that were done to explore its possible causes.  Defense counsel also elicited testimony regarding Dyer's schizotypal personality disorder and the

substantial impact it had on his ability to recognize the victim's medical issues and the risks of not getting her medical treatment.

¶ 26    One doctor testified that, based on conversations with Dyer, she noticed a "gap" or "disconnect" in Dyer's understanding of, or appreciation for, the severity of the victim's medical condition. And another doctor testified that Dyer likely "did not understand [the victim's] medical condition in the way that someone with a more traditional health literacy would." Additionally, both prosecution and defense witnesses testified positively regarding the Dyers' care and concern for the victim. Dyer was described as being attentive and loving with the victim and concerned for her well-being.

¶ 27    Second, even assuming Dr. McIntosh could have given some favorable testimony as to the nature and extent of the victim's brain atrophy in 2013 or its underlying cause, such testimony would not have been without risk. For example, the record undermines some of Dr. McIntosh's proffered testimony. Dyer's pretrial expert witness endorsement indicated that Dr. McIntosh's diagnostic opinion was that "[t]he brain MRI conducted on [the victim] in 2013 showed diffuse volume loss." And the prosecution's pretrial endorsement similarly indicated that, although Dr. McIntosh

initially stated the victim's condition "most likely represent[ed] a severe neurodegenerative process," he ultimately concluded that the findings were "consistent with intermittent primary generalized seizures that are not reminiscent of a more specific primary generalized epilepsy." Dr. McIntosh also characterized the victim as "failure to thrive which could be secondary to frequent seizures."

¶ 28 More to the point, any suggestion by Dr. McIntosh that there was not a substantial decline in the victim's condition from 2009 to 2013 would have been contrary to all the other evidence in the case showing otherwise. Faced with such evidence, defense counsel could reasonably have made the strategic decision that the potential benefits of calling Dr. McIntosh as yet another expert witness to opine on the victim's condition did not outweigh the risks.

¶ 29 Accordingly, Dyer's allegations, even if true, do not establish that counsel's decision not to call Dr. McIntosh and to instead rely on the testimony and cross-examination of the other witnesses fell below an objective standard of reasonableness. *See People v. Newmiller*, 2014 COA 84, ¶ 60 ("[T]rial counsel need not introduce expert testimony on [their] client's behalf if [they are] able effectively to cross-examine prosecution witnesses and elicit helpful

testimony.") (citation omitted); *People v. Washington*, 2014 COA 41, ¶ 35 (holding that counsel was not ineffective for failing to request a continuance to procure a witness where the proffered testimony "would have been cumulative of the testimony of other witnesses").

¶ 30    Moreover, even if Dyer could show that defense counsel's decision not to call Dr. McIntosh was objectively unreasonable, his conclusory assertion in his motion supplement that Dr. McIntosh's purportedly differing opinion would have been the "reasonable doubt [that] may have very well been the deciding factor for the jury" is insufficient to demonstrate a reasonable probability that the result of the proceeding would have been different if he had been called.  *See Carmichael v. People*, 206 P.3d 800, 807 (Colo. 2009) (requiring "some objective corroborating evidence" of prejudice), *overruled on other grounds as recognized by People v. Delgado*, 2019 COA 55, ¶ 1; *People v. Villanueva*, 2016 COA 70, ¶ 68 (holding that conclusory allegation that witness's testimony would have established reasonable doubt is insufficient to establish prejudice).

### D.    Cumulative Error

¶ 31    Dyer also asserts that the cumulative impact of counsel's errors requires reversal.  But even assuming that cumulative error

13

applies to ineffective assistance of counsel claims — an issue we do not decide — it would not apply here because Dyer did not allege facts showing that his counsel's performance was constitutionally deficient in either of the two ways alleged. *See People v. Allgier*, 2018 COA 122, ¶ 70 ("[T]he doctrine of cumulative error requires that numerous errors be committed, not merely alleged.").

### III. Disposition

¶ 32    The order is affirmed.

JUDGE FREYRE and JUDGE SULLIVAN concur.